Kyung L. Trotter
Plaintiff Pro Se
374 Donald Blvd
Holbrook, NY 11741
(631) 202-7887
Trotter.Kyung@yahoo.com

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 12 2026 ★
LONG ISLAND OFFICE

August 12, 2026

RECEIVED
AUG 12 2026
EDNY PRO SE OFFICE

The Honorable Judge Sanket J. Bulsara
United States District Judge
United States District Court for the Eastern District of New York
100 Federal Plaza
Courtroom 930
Central Islip, NY 11722

**Re: Kyung L. Trotter v. Community Development Corporation of Long Island, Inc., *et al*, No. 26-cv-02371 — Letter Response in Opposition to Defendant Community Development Corp. of Long Island, Inc.'s Pre-motion Application**

Dear Judge Bulsara:

Plaintiff Kyung L. Trotter, pro se, respectfully submits this letter in response to Defendant Community Development Corporation of Long Island, Inc.'s (CDLI) pre-motion conference request (ECF No. 47). CDLI's anticipated Rule 12(b)(6) motion is unmeritorious. Plaintiff's Amended Complaint (ECF No. 11) sufficiently states plausible 42 U.S.C. § 1983 claims for due process deprivations resulting from CDLI's widespread custom or policy, and those claims are fully timely under the continuing violation doctrine.

## I. PLAINTIFF ALLEGES PLAUSIBLE SECTION 1983 CLAIMS AGAINST CDLI

### A. CDLI IS A STATE ACTOR LIABLE UNDER MONELL

CDLI explicitly concedes that it acts as the Local Administrator for New York State Homes and Community Renewal (HCR), exercising state-delegated authority over the Housing Choice Voucher (HCV) program. CDLI is therefore a state actor operating under color of state

law for purposes of 42 U.S.C. § 1983. *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408–09 (2d Cir. 1990).

A private entity performing a public function traditionally the exclusive prerogative of the State, is treated as a municipality for the purposes of Section 1983 liability. A private entity acting under color of law cannot be held liable under § 1983 on a respondeat superior theory, but only where its official policy or widespread custom causes the Plaintiff a constitutional deprivation. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691, 694 (1978).

Plaintiff explicitly alleges that CDLI maintains an unwritten policy or custom of converting Section 8 tenants from annually renewed, written leaseholders who possess statutory due process protections under 42 U.S.C. §1437f and 24 C.F.R. §982 (the framework), into "automatic month-to-month" tenants with no protection. Plaintiff also asserted that CDLI's employees, Leslie Barry (Barry) and Delores Phraner (Phraner) practiced the custom collectively for 7 years. They accepted defective Notices of Termination of the Plaintiff's tenancies from Defendants Seven Tier and John Mangino (the Landlords) and processed rent payments for them, by issuing purported "Housing Choice Voucher Program Contract and Tenancy Addendum Amendment" letters ("Amendment Letters") to them, purporting to "extend" their HAP contracts, instead of ensuring that the framework was in place. She also asserted that these "Amendments" were signed by Marrianne Scopo and Mildred Rivera and that the custom was ratified by Wilma Hayes. As CDLI' s actions are fairly attributable to the State, it may be held liable for the actions of its employees under Monell.[1]

---

[1] CDLI points out that Barry, Phraner and Hayes were not served by Plaintiff. This explains that CDLI is liable for the actions of its employees and CDLI was properly served.

**B. CDLI DEPRIVED PLAINTIFF OF HER DUE PROCESS RIGHTS TO ADEQUATE NOTICE BEFORE AN EVICTION IS FILED AND GOOD CAUSE**

As a Section 8 beneficiary, Plaintiff has a property interest in her continued subsidized tenancy. *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 330 (E.D.N.Y. 2012). In addition, A leasehold is a property interest which cannot be taken away without due process. *US v. Leasehold Interest in 121 Nostrand Ave.*, 760 F. Supp. 1015, 1027 (E.D. N.Y. 1991).

CDLI claims that it "follows HUD's regulations for the implementation of the HCV program (24 C.F.R. § 982 et seq.), as well as HCR's Section 8 Administrative Plan." Notably, it mentions nothing about 42 U.S.C. §1437f.

Four subsections of this statute protect the Plaintiff's leasehold, thus continued tenancy. 42 U.S.C.A. § 1437f.(o)(7)A. states that each housing assistance payment contract entered into by the public housing agency and the owner shall provide that the lease between the tenant and the owner shall be for a term of not less than 1 year. This mandate creates a legitimate claim of entitlement that obliterates the possibility of an implied "month to month" tenancy. *Bd of Regents of State Coils. v. Roth,* 408 U.S. 564, 577 (1972).

Adherence to 42 U.S.C.A. § 1437f.(o)(7)A. secures the tenant's due process protections, before her tenancy may be terminated. 42 U.S.C.A. § 1437f.(o)(7)(C) provides that during the term of the lease, the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease, for violation of applicable Federal, State, or local law, or for other good cause. Apparently, this mandate was so important to Congress that it reiterated it in 42 U.S.C.A. § 1437f.(d)(l)(B)(ii).

It tops off the protection with 42 U.S.C.A. § 1437f.(d)(l)(B)(iv) commanding that any termination of tenancy shall be preceded by the owner's provision of written notice to the tenant specifying the grounds for such action.

CDLI does not follow 42 U.S.C.A. § 1437f. While it may not be a party to the lease, it is a party to the HAP contract, governed by 42 U.S.C.A. § 1437f.(o)(7)A. Moreover, CDLI cannot disregard its legal obligation under this law and then claim that any deprivation that arises is out of a "private" lease, over which it has no authority. It indeed has the authority as the State Local Administrator (LA) to ensure that the landlord has executed a written lease.

Plaintiff asserted in her complaint that CDLI's implied "month to month" tenancy custom, eliminates the written lease- which eliminates this entire structure of protection "during the term of the lease". As a result, landlords don't have to execute written leases annually and may terminate the tenancy without good cause, by serving notice merely alleging that the tenant is a month to month holdover. Plaintiff also asserted that because CDLI's employees accepted the Landlords' defective notices, they were able to move forward and file their evictions, alleging the same.

This is precisely why Defendant Mangino's (Mangino) eviction case was dismissed by the State Court on June 23, 2026. The State Court found that Mangino failed to serve the Plaintiff adequate notice, failed to allege good cause and failed to assert good cause in his petition. (See Exhibit A, the State Court's order, Page 2). Thus, Mangino deprived the Plaintiff of procedural due process secured by the 14th Amendment and 4 federal laws. CDLI's claim that "Plaintiff has not, because she cannot, allege a deprivation of a constitutionally protected property interest" fails pursuant to the Court's order. These issues of deprivations of notice and good cause are decided. CDLI, in privity with Defendant Mangino, is collaterally estopped from

relitigating them by declaring that Plaintiff's "only" property interest is her HCV benefit, or that a claim for deprivation is not ripe until an eviction occurs. *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 310 (2d Cir. 2005).

**C. CDLI DEPRIVED PLAINTIFF OF HER PROPERTY INTEREST IN HER HCV BENEFIT WITHOUT DUE PROCESS**

As CDLI further concedes, Plaintiff has a property interest in her HCV benefit. CDLI claims that because it did not formally terminate Plaintiff's voucher in its system, no deprivation occurred. This ignores Plaintiffs "end-run" claim. CDLI could only terminate this benefit via formal notice and an administrative hearing. By replacing the mandatory framework with an unauthorized custom, CDLI functionally terminated the Plaintiff's HCV benefit, without affording her notice or a hearing. Contrary to CDLI's contention that Plaintiff "alleges no termination", Plaintiff's assertion that there was no termination *is* the claim.

**D. CDLI'S CUSTOM OR POLICY IS THE MOVING FORCE BEHIND THE PLAINTIFF'S DEPRIVED RIGHTS**

CDLI's failure to follow the federal framework and instead implement and practice its custom or policy, is the moving force behind the deprivations of the Plaintiff's constitutional rights. Defendant Zawyrucha's (Zawyrucha) admissions during the eviction trial, confirm the same.

At the trial, the Court explained that it was going to review 42 U.S.C. §1437f and 24 C.F.R. §982.310(e), to determine if there were mandates that evictions involving Section 8 tenants require good cause. (Exhibit B, Mangino v. Trotter June 18th Transcripts, Pg. 59, Lines 6-22.) To this Defendant Zawyrucha replied:

> [T]here's been *a lot* of landlord/tenant cases involving Section 8 and they have to usually be done by holdover…I don't think there's any of them…[T]here is no requirement of good cause in the filing of a holdover petition involving a Section 8 client, and Section 8 is the one that's [been] going along with that…Her complaint is with the CDC...

(Exhibit B, Pg. 59, Line 24-25 and Pg. 60, Line 1, Pg. 58, Lines 23-25 and Pg. 59, Line 1 and Pg. 61, Line 8, respectively.) Clearly, according to Zawyrucha, the custom is widespread as it happens "a lot" and directed by CDLI. Plaintiff's plausible complaint and Zawyrucha's admissions confirm that but for CDLI's custom or policy, Plaintiff's rights secured by the Constitution and laws would not have been deprived without due process. That issue is still before this Court to redress. Without a decision on this issue, Plaintiff stands to face yet another eviction proceeding in January 2027, according to the State Court's order. (See Exhibit A, Pg. 4).

**II. PLAINTIFF'S CLAIMS ARE TIMELY UNDER THE CONTINUING VIOLATION DOCTRINE**

In general, Section 1983 claims arising in New York are subject to a three-year statute of limitations. *See Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015). However, the continuing violation doctrine provides an equitable exception to the standard accrual timeline. *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999). When a plaintiff seeks redress for injuries resulting from a continuous, systematic custom or policy rather than isolated, discrete acts, the limitations period does not begin to run until the final occurrence of the challenged practice. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-381 (1982). To invoke the doctrine in a 42 U.S.C. § 1983 action, a plaintiff must allege both the existence of an ongoing unconstitutional policy or custom and at least one non-time-barred act taken in furtherance of that policy. *Shomo v. City of New York*, 579 F.3d 176, 181-182 (2d Cir. 2009).

Plaintiff explains the framework in paragraphs 30.-47. of her complaint, and asserts from paragraphs 48.-68., that CDLI maintains a widespread, unwritten custom or policy that their Section 8 tenants, instead of receiving annual written lease renewals, coterminous HAP contracts and Tenancy Addendums, "automatically convert to month-to-month". In addition, Plaintiff asserts that Mangino failed to serve her adequate notice before terminating her tenancy and that both he and Zawyrucha, filed a petition without alleging good cause in 2025, well within 3 years. As Plaintiff asserts that CDLI maintains a systemic custom or policy, not isolated discrete acts, and that further non-time barred acts occurred, Plaintiff's amended complaint is timely under the continuing violation doctrine.

For these reasons, CDLI's request for a pre-motion conference should be denied.

**DECLARATION**

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

Executed on August 12, 2026

KYUNG L. TROTTER
Plaintiff, Pro Se
374 Donald Blvd
Holbrook, NY 11741
(631) 202-7887
Trotter.Kyung@yahoo.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------------x

KYUNG L. TROTTER,

Plaintiff,

-v-

COMMUNITY DEVELOPMENT CORPORATION OF LONG ISLAND, INC.,
SEVEN TIER, L.P., a.k.a. CRAIG RUBENSTEIN
LESLIE BARRY,
JOHN MANGINO,
DELORES PHRANER,
WILMA HAYES,
THOMAS ZAWYRUCHA

Defendants

Case No.: 26-cv-02371 (SJB) (ARL)

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMIT**

---------------------------------------------------------------------------------x

Pursuant to the Court's Rule VI.I, 1. as well as Local Civil Rule 7 .1 (c), I hereby certify that this Response contains 1,749 words, exclusive of the caption and signature block, and complies with the length restrictions imposed by the Court.

KYUNG L. TROTTER
Plaintiff, Pro Se
374 Donald Blvd
Holbrook, NY 11741
(631) 202-7887
Trotter.Kyung@yahoo.com

The crux of Respondent's defense is that the petition should be dismissed because Petitioner was required to, but failed to provide good cause for the termination because the lease was re-newed for a "successive year" upon Petitioner's acceptance of rent payments following the termination date. According to Respondent, the lease was extended for another year through January 2025, and then further extended again, through January 2026, as a result of Petitioner's ongoing acceptance of rent payments.

Petitioner does not refute the acceptance of rent payments following the expiration of the original lease. Rather, Petitioner contends that the Section 8 tenancy became a month-to-month tenancy following the expiration of the initial lease term in January 2024, and, as a result, Petitioner was within his rights to terminate the tenancy without cause after giving proper notice at the conclusion of the lease term, i.e., the end of each month. It seems that Petitioner concedes that during any particular term, good cause, as required in the original lease, would have been required. However, since Petitioner sought to terminate the month-to-month tenancy at the end of a particular month (another way for saying refusing to re-new after the expiration of the term), good cause was neither required to be specified in the notice nor pled in the petition.

Although New York's Good Cause Eviction Law (GCEL) has not been enacted in Suffolk County, the Court's analysis does not stop there because Section 8 is a Federal-based housing assistance program that requires the parties to comply with not only State and local laws, but with the applicable Federal laws pertaining to Section 8 tenancies. The Federal rules and regulations regarding Section 8 tenancies require a landlord to demonstrate good cause for the termination of a Section 8 tenancy. Significantly, Petitioner agreed to these terms when he executed both the HAP contract and the Section 8 residential lease. Subdivision 8 of Part C of the HAP Contract, Tenancy Addendum states that "[d]uring the term of the lease (*the initial term of the lease and any extension term*), the owner may <u>only</u> terminate the tenancy because of: (1) Serious of repeated violation of the lease; (2) Violation of Federal, State, or local law that imposes obligations on the tenant in connection with the occupancy or use of the unit and the premises; (3) Criminal activity or alcohol abuse (as provided in paragraph c); or (4) Other good cause (as provided in paragraph d)" (Petitioner's Exh. 1, at p. 9) (emphasis added). The section goes on to expand upon and describe the conduct that amounts to "criminal activity" warranting termination, and further delineates examples of other good cause for termination of the tenancy during and following the initial lease term (***Id.***). Of note, the failure to pay rent is grounds to terminate a Section 8 tenancy.

Notwithstanding clear evidence regarding Respondent's failure to pay her proportionate share of the rent from December 2025 to the present, which coincides with the lease termination date, Petitioner has neither pled any breach of the lease agreement or misconduct on the part of Respondent nor provided Respondent with any such notice in advance of this proceeding. The requirement of good cause to terminate a Section 8 tenancy, even after the expiration of the initial lease term as was the case here, has been upheld in this Judicial Department. In this county, a Landlord is not forced to continue to provide a Section 8 Tenant who is compliance with all of the Section 8 provisions and lease terms a residence in perpetuity. Rather, the Landlord may elect not



Exhibit A

The subject lease in this case includes identical language regarding one year successive renewals and good cause being required for lease termination during the initial lease term and any extensions. Accordingly, the Court finds that Petitioner's acceptance of rent following the expiration date constituted a renewal lease for an additional year, which apparently was duplicated a second time. As a result, the August 2025 notice terminating the tenancy during the middle of the second successive one year renewal without good cause was defective. Since the predicate notice is not subject to amendment, any request, even if had been made, to conform the termination notice to the proof introduced at trial would be denied. To proceed with a lease termination without cause, it appears that the next opportunity to proceed in that matter with notice will occur when the lease is due to expire on January 31, 2027. In the interim, should there be good cause to terminate the lease prior to that date, this decision in no way precludes Petitioner from commencing such subsequent proceeding after proper notice is given.

The Court considered the remaining claims and arguments and found them to be without merit.

Based upon the foregoing, it is hereby

***ORDERED***, that the petition is dismissed.

This constitutes the Decision and Order of the Court.

Dated: Ronkonkoma, New York
June 23, 2026

HON. STEPHEN L. UKEILEY, J.D.C.

ENTERED
JUN 25 2026

MAILED
JUN 29 2026

lease apparently November 30, 2025, so, what was the basis for the termination?

MR. ZAWYRUCHA: Your Honor, the basis is not required, your Honor.

THE COURT: Okay, so, that's what I'm asking so, there was no basis, just you're saying the Petitioner brought it's right to terminate the lease because it didn't want to renew it; is that correct?

MR. ZAWYRUCHA: Yes.

THE COURT: Yes? Okay, that's all I was asking.

MS. TROTTER: Your Honor.

THE COURT: Just give me a second.

MS. TROTTER: Okay.

MR. ZAWYRUCHA: It even says here in the, on page 10 of the lease, it says;

"During the initial lease term other good cause for termination must be something the family did or failed to do, after the initial lease term."

And examples, the examples of other good cause do not preempt any state or local laws to the contrary."

We are not part of the good cause following which is in other portions of this, like in New York City, we're not part of that, there is no requirement of good cause in the filing of a holdover petition involving a Section 8 client, and Section 8 is the one that's being going along

Exhibit B

with that, we're doing nothing that is untoward, I do apologize for making some of those comments about law schools and things like that, I think it was a little bit much of me, so, I am apologizing to Ms. Trotter at this time.

THE COURT: Alright, so, what's going to happen and I'm going to let you respond, Ms. Trotter, but what's going to happen is I'm going to be reserving decision today, I'm going to be reviewing those two sections cited by Ms. Trotter to see if there's any provisions in there, that says good cause or actual cause is required to terminate a Section 8 tenancy. It's either going to be there or it's not going to be there and that's something that I'm to take the time to review both sections to see if it's there or not. And Mr. Zawyrucha, I agree with you a hundred percent, New York has not or Suffolk County has not adopted good cause eviction, but this is a Section 8 tenancy, so, I just want to be doubly sure and double-check the relevant Section 8 statutes to see if those statutes impose any responsibilities or obligations on the Petitioner prior to terminating the Section 8 tenancy and then I'll see what the case, what the statute say.

MR. ZAWYRUCHA: Your Honor, I just want to let you know that there's been a lot of landlord/tenant cases involving Section 8 and they have to usually be

done by holdover. And I don't think there's any of them.

THE COURT: I'm not saying a holdover is, a holdover would probably be the proper forum, the question just is was cause required and as I said, I'm going to familiarize myself with those two sections to see if it requires it or not, either it does or it doesn't, --

MR. ZAWYRUCHA: Thank you.

THE COURT: -- it's just as simple as that.

MR. ZAWYRUCHA: Thank you, your Honor.

THE COURT: What did you want to say in closing, Ms. Trotter?

MS. TROTTER: I just wanted to point out that Mr. Zawyrucha actually stood in court and read the good clause regulations, so, he's very, he's familiar with it and he knows that it's supposed to apply in a Section 8 eviction and I just wanted to point out that the grounds say during the term of the lease and just like I asserted in my federal case, these grounds are supposed to be, protect the tenant and that's why it says during the term of the lease, and, so, I filed a federal case that said that CDCLI has a policy that strips tenants of their leases and, so, the landlords don't have to show good cause we don't get a lease.

THE COURT: Okay.