RECEIVED
8/18/26
PRO SE OFFICE

*** Filed ***
04:42 PM, 17 Aug, 2026
U.S.D.C. Eastern District of New York

Dear Clerk's Office:

I am Defendant John Mangino, appearing pro se in Kyung L. Trotter v. Community Development Corporation of Long Island, Inc., et al., Case No. 26-CV-02371.

I am forwarding this email concerning my Answer to Plaintiff Kyung L. Trotter's Amended Complaint, which was required to be filed by August 7, 2026.

I attempted to submit my Answer on time, before the August 7 deadline, but due to a misunderstanding regarding the email address I was given for pro se electronic submissions, my filing was sent to the wrong email address.

I am forwarding the original email so that the Court can see the date and time of my original timely submission. I am also attaching my Answer again.

I respectfully request that the Clerk accept my Answer for filing and recognize that I made a timely good-faith attempt to file it before the Court's deadline. The delay in its receipt by the correct office resulted solely from the email-address misunderstanding and was not an intentional failure to answer or otherwise defend this action.

I also respectfully request that no default be entered against me based upon this filing issue, as I timely attempted to submit my Answer and have continuously intended to defend this action.

Please advise me if I need to take any additional steps or submit any additional documentation to have my Answer properly filed.

Thank you for your assistance.

Respectfully,

John Mangino
Defendant, Pro Se
Case No. 26-CV-02371

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KYUNG L. TROTTER,

Case No.: 26-cv-02371
(SJB) (ARL)

Plaintiff,

-against-

**ANSWER TO FIRST AMENDED COMPLAINT**

COMMUNITY DEVELOPMENT CORPORATION OF LONG ISLAND, INC.,
SEVEN TIER, L.P., a.k.a. CRAIG RUBENSTEIN
LESLIE BARRY,
JOHN MANGINO,
DELORES PHRANER,
WILMA HA YES,
THOMAS ZA WYRUCHA,

Defendants(s),
-------------------------------------------------------------------X

The Defendant John Mangino, appearing ***pro se***, hereby tenders the following Answer to the plaintiff's First Amended Complaint:

**INTRODUCTORY STATMENT**

Defendant Mangino denies the allegations in the Introductory Statement of the plaintiff's First Amended Complaint

**JURISDICTION AND VENUE**

1. This Court has subject-matter jurisdiction under 28 U.S.C. § 1343(3) (civil rights) and 28 U.S.C. § 1331 (federal question), as Plaintiff alleges deprivation of rights

secured by the Constitution, federal statute and regulation (42 U.S.C. § 1983; 42 U.S.C. § 1437f and implementing regulation 24 CFR §982).

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

2. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b) as the events giving rise to the claims occurred in Suffolk County, New York, within this district.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

**PARTIES**

3. Plaintiff Kyung L. Trotter, is a tenant of 374 Donald Blvd, Holbrook, NY 11741, and a participant in the Federal Housing Choice Voucher (HCV) program administered locally by Defendant CDCLI.

Answer: Admit that plaintiff formerly occupied the premises under a lease at one point but does not believe plaintiff is currently a tenant under a lease with all the previous rights and status formerly applicable during the lease term,

4. Defendant COMMUNITY DEVELOPMENT CORPORATION LONG ISLAND (CDCLI), located at 1660 Walt Whitman Rd # 130, Melville, NY 11747, is a Housing Development Corporation responsible for administering the HCV program in Suffolk and Nassau County. The New York State Department of Housing and Community Renewal (DHCR), is NY state's affordable housing agency. Its subsidiary is the Housing Trust Fund Corp. (HTFC), which is a public benefit corporation and Public

Housing Authority (PHA). HTFC receives federal funds from the U.S. Department of Housing and Urban Development (HUD), to administer the Housing Choice Voucher (HCV) program. HTFC subcontracts to CDCLI, to administer the HCV program on its behalf, delegating its State authority to CDCLI, to administer the program in Suffolk and Nassau County, NY.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

5. CDCLI, on behalf of HTFC, performs such functions traditionally the exclusive prerogative of the State, including: lease approval, execution and administration of Housing Assistance Payment (HAP) contracts, regulatory enforcement, tenant eligibility determinations, termination from the program, and oversight of termination of tenancy procedures.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

6. CDCLI acts under color of state law as it exercises authority delegated by HTFC and performs a public function. *Lugar v Edmondson Oil Co.,* 457 U.S. 922, 939 (1982). *Marsh v. Alabama,* 326 U.S. 501, 506 (1946).

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

7. CDCLI is sued in its official capacity.

Answer: Denies knowledge or Information Sufficient to form a belief

8. SEVEN TIER, L.P. is a limited partnership and landlord, located at 258 Granny Road, Medford, NY, 11763, who owns the residential property located at 448 Donald Blvd, Holbrook, NY 11741.

Answer: Denies knowledge or Information Sufficient to form a belief.

9. Seven Tier acted under color of state law by willfully participating in joint activity with CDCLI and its agents, including Defendant Barry, in the administration of Plaintiff's HCV tenancy, including: failing to offer lease renewals, failing to certify that it had complied with 42 U.S.C. §1437f and 24 CFR §982, receiving HAP payments contingent on compliance with said statute and regulation and utilizing CDCLI's practices to effectuate termination, without good cause.

Answer: Denies knowledge or Information Sufficient to form a belief.

10. Accordingly, Seven Tier's conduct is fairly attributable to the State under *Lugar v. Edmondson Oil Co., 457 US. 922 (1982).*

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

11. Seven Tier is sued in its individual capacity.

Answer: Denies knowledge or Information Sufficient to form a belief.

12. Defendant JOHN MANGINO is a landlord, located at 9 Heather Crescent, Commack, NY 11725, who owns or manages the residential property located at 374 Donald Blvd, Holbrook, NY 11741.

Answer: Admit

13. Mangino acted under color of state law by willfully participating in joint activity with CDCLI and its agents, including Defendant Phraner, in the administration of Plaintiff's HCV tenancy, including: failing to offer lease renewals, failing to certify that he had complied with 42 U.S.C. §1437f and 24 CFR §982, receiving HAP payments contingent on compliance with said statute and regulation and utilizing CDCLI's practices to effectuate termination, without good cause.

Answer: Denies

14. Mangino's conduct is therefore fairly attributable to the State under *Lugar v. Edmondson Oil Co.,* 457 U.S. 922 (1982).

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

15. Mangino is sued in his individual capacity.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

16. Defendant LESLIE BARRY was a CDCLI Housing Specialist located at 1660 Walt Whitman Rd # 130, Melville, NY 11747, assigned to Plaintiff's tenancy at 448 Donald Blvd, Holbrook, NY 11741.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

17. Barry's duties included: receiving and reviewing leases, ensuring compliance with 24 C.F.R. §982, conducting recertifications and enforcing regulatory requirements, *inter alia.*

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

18. Barry is sued in her official capacity.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

19. Defendant DELORES PHRANER was a CDCLI Housing Specialist, located at 1660 Walt Whitman Rd # 130, Melville, NY 11747, assigned to Plaintiff's tenancy at 374 Donald Blvd, Holbrook, *NY* 11741.

Answer: Denies knowledge or Information Sufficient to form a belief.

20. Phraner's duties included: receiving and reviewing leases, ensuring compliance with 24 C.F.R. § 982, conducting recertifications and enforcing regulatory requirements, *inter alia.*

Answer: Denies knowledge or Information Sufficient to form a belief.

21. Phraner is sued in her official capacity.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

22. Defendant WILMA HAYES is the Assistant Director of CDCLI, located at 1660 Walt Whitman Rd # 130, Melville, NY 11747, and a final policymaker.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

23. Hayes: reviewed Plaintiff's complaints, ratified CDCLI's practices and exercised supervisory authority over program administration.

Answer: Denies knowledge or Information Sufficient to form a belief.

24. Hayes is sued in her official capacity.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

25. Defendant THOMAS ZAWYRUCHA is an attorney-at-law licensed to practice in the State of New York, with a principal place of business located at 15 Woodhollow Road, Box 477, Great River, New York 11739.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

26. Defendant ZAWYRUCHA acted under color of state law within the meaning of 42 U.S.C. § 1983 by willfully engaging in joint activity and conspiring with Judge Stephen Ukeiley, the presiding judicial officer in the state court eviction proceeding brought by Defendant Mangino against the Plaintiff, as well as an unnamed Court Clerk.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

27. Zawyrucha's participated in two clandestine and *ex parte* agreements with state officials, to subvert the Plaintiff's right to notice and the opportunity to be heard, as well as to insulate the proceedings from appellate review.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

28. Zawyrucha's conduct, specifically his collaboration with Judge Stephen Ukeiley and an unnamed Court Clerk to bypass mandatory procedural safeguards and ensure the withholding of appealable written orders, is fairly attributable to the State. *Dennis v. Sparks,* 449 U.S. 24 (1980).

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

29. Zawyrucha is sued in his individual capacity.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

**STATUTORY AND REGULATORY FRAMEWORK OF THE HCV PROGRAM**

**Landlord Duty to Form the Tenancy Structure**

30. Plaintiff hereby incorporates and realleges paragraphs 1 through 29 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

31. The form of the Section 8 tenancy structure, upon which a landlord may be paid, consists of two contracts: the lease between the landlord and tenant and the HAP contract between the Local Administrator (LA) and the landlord.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

32. The provisions 42 U.S.C.A. § 1437f.(o)(7)A. and 24 CFR §§982.308(b)(1); 308(f)(2) taken together, state that the landlord must enter into a written lease with the tenant, for not less than 1 year, attach the Tenancy Addendum (TA) to the lease or, if it is a standard lease that he uses with unregulated tenants, such must contain the words of the Tenancy Addendum, word for word.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

33. The lease must also include an explicit clause for renewal.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

34. The landlord must certify on his HAP contract, that he has complied with all the legal requirements of said contract.

Answer: Admit

35. When the landlord certifies his HAP contract, he is also affirming that he is in compliance with the Housing Quality Standards (HQS).

Answer: Admit

36. Unless the landlord has complied with the legal requirements, pursuant to 42 U.S.C.A. § 1437f.(o)(7)A. and 24 CFR §982.308(b)(1), the landlord has no right to receive housing assistance payments under the HAP contract.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

**The LA Duties to Form the Tenancy Structure**

37. Plaintiff hereby incorporates and realleges paragraphs 1 through 36 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

**38.** The LA must use its best efforts to execute the HAP contract within 60 days of the beginning of the lease term. While this subsection also states that the PHA "must use best efforts to execute the **HAP contract** *before the beginning* of the lease term", this conflicts with 24 C.F.R. 982.309(b)(1), which states that the HAP contract begins on the first day of the lease term, and ends on the last day of the lease term.

Moreover, once the HAP contract is executed within the required 60 days, the landlord is only paid for up to 60 days from the beginning of the lease term.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

39. The regulation does not explicitly state that the LA must physically check that the tenant has a written lease and a Tenancy Addendum, or a lease with the word for word verbiage of the Tenancy Addendum. However, the LA is the entity to which the landlord is certifying that he has complied. Thus, direct verification is implied.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

40. The LA may not pay the landlord until the HAP contract has been executed, complete with the landlord's certification that he has complied with the statutory and regulatory requirements.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

41. Subsequently, if this structure of:

- a written lease with the tenant, for not less than 1 year,
- the Tenancy Addendum attached to the lease or,
- if not, and the lease is a standard that the landlord uses with unregulated tenants, it must contain the words of the TA, word for word,

- an explicit clause for renewal,
- The landlord's certification on his HAP contract that he has complied with all the requirements, and
- an executed HAP contract coterminous with the lease, is not established and in place, then the LA may not pay the landlord.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

**Termination of the Tenancy- The LA**

42. Aside from the tenant moving from the home, there are only two ways to terminate the tenancy and two parties that may do so. The first is the LA.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

43. There is no such provision statutorily or otherwise, that allows the LA to terminate a lease alone. To terminate a lease, it must terminate the subsidy that pays the landlord itself, and remove the tenant from the HCV program.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

44. To remove the tenant from the program, it must provide the tenant with a hearing. It is only by this procedure that the LA may eliminate a lease.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

**Termination of the Tenancy- The Landlord**

45. The second way is the landlord may terminate the tenancy. However, to do so, the landlord must serve the tenant notice, asserting grounds for good cause. 42 U.S.C.A. §§ 1437f (d)(1)(B)(iv) and (o)(7)(C); 24 C.F.R. §982.310(e)(2)(i) and 42 U.S.C.A. §1437f(d)(1)(B)(ii), TA form HUD-52641-A¶ 8.

Answer: Denies that this is the only way.

46. Only then may the landlord proceed to file an eviction in court. However, the landlord must plead grounds for good cause there as well.

Answer: Denies that this is the only way.

47. Indeed, the landlord must disclose all the material facts of the case under RPAPL §741, including the fact that the tenant is an HCV beneficiary.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

**CDCLI'S "MONTH TO MONTH" CUSTOM, PRACTICE, OR USAGE**

48. Plaintiff hereby incorporates and realleges paragraphs I through 47 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

49. CDCLI has a custom, practice or usage (custom) which eliminates both processes.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

50. This custom consists of treating HCV tenancies as automatically transforming into month-to-month, after the expiration of the first, one-year term, and eliminating the required written lease renewals.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

51. Said lease renewals pursuant to the 42 U.S.C. §1437f and 24 CFR §982 shall be written, not less than one year, with renewed HAP contracts, coterminous with the renewal terms.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

52. CDCLI's custom is implemented by eliminating said procedures which secure this framework and supplanting its unofficial custom of automatic month to month tenancy, in its place.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

53, It implements this custom annually during the tenant's recertification of eligibility for her benefit. During recertification it conducts an inspection of the premises.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

54. If it finds that the home meets the HQS then it is obligated to reestablish a renewed framework, including utilizing the HUD form 52461, which is the HAP contract, the form 52461-A, which is the Tenancy Addendum and a written lease, as prescribed in 24 C.F.R. §982.162.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

55. The Tenancy Addendum is quite literally the placement of the tenant's rights which may be enforced against the landlord, into the tenant's hand, to make him or her aware of the due process protections that attach, when this framework is followed by the PHA- in this case CDCLI. Having these rights placed into the tenant's hand is so important to HUD, that the verbiage of the same must be word-for-word in the lease and such verbiage is also included in the HAP contract.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

56. CDCLI does not adhere to the federally required framework. According to CDCLI it can just issue a document titled "Housing Choice Voucher Program Contract and Tenancy Addendum Amendment" the (Purported Amendment). (See Exhibit 1).

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

57. These documents purport to continue the expired HAP contract and Tenancy Addendum from the first year of the compliant tenancy, without execution of a new written lease, despite the requirements of 42 U.S.C.A. § 1437f(o)(7)A, 24 C.F.R. §§ 982.308, 309 and 162.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

58. These documents are issued on CDCLI letterhead and signed by supervisory officials, including an Assistant Director and a Vice President of Rental Assistance.

Answer: Denies knowledge or Information Sufficient to form a belief.

59. Through this practice, CDCLI can continue paying the landlord HAP payments in the absence of a legally compliant tenancy, and evade the due process protections that would attach for the tenant, if such framework was lawfully established.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

60. Because the tenant is left with no written lease to show that she has a right to remain in her home, this practice simultaneously permits the landlord to evict the tenant as a "holdover", under state law only, as opposed to the federal mandate to show good cause, before the landlord may terminate the tenancy.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

61. If the tenant could show her lease as proof of her status as an HCV beneficiary, the landlord would have to serve notice containing the grounds for good cause to remove her.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

62. The landlord would also have to plead those same grounds in an eviction petition, complying with the requirements of 42 U.S.C.A. §§ 1437f.(d)(1)(B)(iv) and (o)(7)(C) and 24 C.F.R. § 982.310(e)(2)(i).

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

63. CDCLI' s custom alleviates the landlord of both due process requirements.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

64. The custom allows the landlord to continue to get paid and the PHA to continue receiving administrative fees to manage the tenant's benefit, while leaving the tenant vulnerable to an eviction at will.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

65. In addition, CDCLI abandoning those required conditions, deprives the tenant of the voucher benefit itself, in its lawful form, a form which allows due process protections to attach.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

66. CDCLI may not place the tenant in the practical position she would be in had it terminated her voucher with a hearing, indirectly, what it cannot lawfully achieve directly.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

67. This custom was implemented by CDCLI employees, including Defendants Barry, Phraner and supervisors who signed the purported amendments for the years 2018, 2019, 2020, 2021, 2022, 2024, 2025 and 2026. (See Exhibit 1 as to supervisors).

Answer: Denies knowledge or Information Sufficient to form a belief.

68. CDCLI in 2008, also issued new HCV beneficiaries a handbook, which explicitly stated that the statuses of their tenancies automatically convert to month to month. (See Exhibit 2).

Answer: Denies knowledge or Information Sufficient to form a belief.

## FACTUAL ALLEGATIONS

### I. TENANCY AT 448 DONALD BLVD (DEFENDANT SEVEN TIER)

**Formation of the Tenancy**

69. Plaintiff hereby incorporates and realleges paragraphs 1 through 68 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

70. On or about Dec 1, 2017, Plaintiff, Kyung Trotter (Plaintiff) moved into 448 Donald Blvd, Holbrook, NY 11741 (the 448 Home), owned by Seven Tier, LP.

Answer: Denies knowledge or Information Sufficient to form a belief.

71. Plaintiff and Seven Tier entered into a written lease for a duration of 1 year. Seven Tier and CDCLI executed a HAP contract coterminous with the lease term. Plaintiff received a Tenancy Addendum.

Answer: Denies knowledge or Information Sufficient to form a belief.

72. Seven Tier included a clause in its lease that Plaintiff would "peacefully surrender" the premises at the end of the lease term, instead of the required lease renewal clause, pursuant to 24 C.F.R. § 982.308(d)(3).

Answer: Denies knowledge or Information Sufficient to form a belief.

**Failure to Renew Leases**

73. Said lease expired on November 30, 2018.

Answer: Denies knowledge or Information Sufficient to form a belief.

74. Seven Tier did not offer Plaintiff a renewal lease for December 2018 to on or about March 2019.

Answer: Denies knowledge or Information Sufficient to form a belief.

75. Seven Tier did not offer Plaintiff leases renewals for 2020, 2021, or 2022.

Answer: Denies knowledge or Information Sufficient to form a belief.

76. For approximately four years, no written lease renewals, TAs, or coterminous HAP contracts existed to establish what should have been a compliant, protective tenancy for the Plaintiff.

Answer: Denies knowledge or Information Sufficient to form a belief.

No **Certifications**

77. Seven Tier did not certify on a renewed HAP contract that it had executed new leases between it and the Plaintiff for the aforesaid years.

Answer: Denies knowledge or Information Sufficient to form a belief.

**Rent Increases Without Lease or Agreement**

78. During annual recertifications of the benefit, Defendant Barry stepped into the shoes of the Plaintiff and agreed to Seven Tier's increases in the rent on or about March 1, 2021 from $2,082 to $2,368, and on or about December 1, 2022, from $2,368 to $2,485.

Answer: Denies knowledge or Information Sufficient to form a belief.

79. By the time the Plaintiff moved out of the 448 home, her portion of the rent had changed from $734 to $1,042 for a total of a $403 increase, without her agreement.

Answer: Denies knowledge or Information Sufficient to form a belief.

80. Barry then continued processing HAP payments for Seven Tier, for approximately 48 months, including the rent increases for 2021 and 2022.

Answer: Denies knowledge or Information Sufficient to form a belief.

81. These actions violated the regulatory provisions set forth supra, including 42 U.S.C.A. § 1437f(o)(7)(A) and 24 C.F.R. §§ 982.308, 982.309, and 982.305.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

82. During this same period, Barry issued the purported amendments.

Answer: Denies knowledge or Information Sufficient to form a belief.

**HQS Violations and Improper Delegation of Responsibilities**

83. The 2017-2018 lease stated:

"The Landlord shall maintain the dwelling unit and all equipment provided for-the use and-benefit of the Tenant in compliance with the Housing Quality Standards as defined in 24 CFR §982.401. The Landlord shall respond in a reasonable time to calls by the Tenant for Services consistent with this obligation."

Answer: Denies knowledge or Information Sufficient to form a belief.

84. On or about March 5, 2019, Seven Tier sent Plaintiff a text message informing her that it would cease any and all direct communication with her, for reasons not disclosed by Seven Tier to the Plaintiff.

Answer: Denies knowledge or Information Sufficient to form a belief.

85. Seven Tier provided Plaintiff with phone numbers for at least 3 of its contractors and ordered her to coordinate any future repairs for her home herself, directly with its contractors.

Answer: Denies knowledge or Information Sufficient to form a belief.

86. This conduct effectively' shifted Seven Tier's obligations to comply with the Housing Quality Standards 24 C.F.R. §982.401 (at the time), onto Plaintiff for on or about 4 years.

Plaintiff's Complaints and CDCLI's Response

87. Plaintiff attempted to have Seven Tier resume its HQS responsibilities by sending it a certified letter on February 15, 2022 explaining that coordinating maintenance was not her legal responsibility.

88. Seven Tier did not respond.

Answer: Denies knowledge or Information Sufficient to form a belief.

89. On May 4, 2022, Plaintiff complained to Defendant Barry via email.

Answer: Denies knowledge or Information Sufficient to form a belief.

90. Defendant Barry not only did nothing to rectify the issue, but she defended Seven Tier stating: "You do...have a point of contact...the point of contact works with the landlord directly." (See Exhibit 3).

Answer: Denies knowledge or Information Sufficient to form a belief.

91. She then shifts the blame for the HQS to the Plaintiff, claiming that she has "been made aware" that Seven Tier purportedly tried to work with the Plaintiff, referring to times w*h*ich Seven Tier sent contractors to the Plaintiff's home on weekends, or after 5 p.m. on weekdays, without notice to or coordination with the Plaintiff and in violation of NY State law.

Answer: Denies knowledge or Information Sufficient to form a belief.

92. Barry minimized Seven Tier's failure to offer Plaintiff written lease renewals, which contained the clause of communication, by apologizing that "things [had] changed in the last two years".

Answer: Denies knowledge or Information Sufficient to form a belief.

93. Barry further admitted: "As you recertify with our program, we continue to renew our cont[r]act (the HAP contract) with the landlord."

Answer: Denies knowledge or Information Sufficient to form a belief.

94. She then stated: "You may withdraw from this program".

Answer: Denies knowledge or Information Sufficient to form a belief.

95. With respect to Seven Tier serving the notice which Barry accepted as adequate, on November 29, 2022 she stated: "...you may choose to pay your portion, you may vacate, you may stay and he will choose to go through the eviction process...this is all up to you as you are the head of the household." (See Exhibit 4).

Answer: Denies knowledge or Information Sufficient to form a belief.

96. Barry also stated that she was copying her supervisor on the email.

Electrical Hazard Incident

Answer: Denies knowledge or Information Sufficient to form a belief.

97. On or about April 19, 2022, Plaintiff smelled smoke in her kitchen and shut off power to the affected area.

Answer: Denies knowledge or Information Sufficient to form a belief.

98. Plaintiff's brother who lived with her at the time, texted Seven Tier and requested that it send an electrician.

Answer: Denies knowledge or Information Sufficient to form a belief.

99. Seven Tier instead sent its HVAC contractor.

Answer: Denies knowledge or Information Sufficient to form a belief.

100. The contractor came to the home and discovered that there was something loose in the panel box in the basement. He then told Plaintiff that he would inform Seven Tier that the problem was electrical and advise him to send an electrician.

Answer: Denies knowledge or Information Sufficient to form a belief.

101. Seven Tier did not send an electrician.

Answer: Denies knowledge or Information Sufficient to form a belief.

102. Plaintiff and her family left the home for that night out of fear that it would catch fire.

Answer: Denies knowledge or Information Sufficient to form a belief.

103. Upon return, Plaintiff had no heat or hot water due to the loss of power to the boiler.

Answer: Denies knowledge or Information Sufficient to form a belief.

**Municipal Intervention**

104. Plaintiff's brother texted Seven Tier several times but received no reply.

Answer: Denies knowledge or Information Sufficient to form a belief.

105. Plaintiff then contacted the town of Islip to report that she had no heat or hot water.

Answer: Denies knowledge or Information Sufficient to form a belief.

106. A municipal inspector came to the home, subsequently cited Seven Tier, and ordered it to restore the heat and hot water.

Answer: Denies knowledge or Information Sufficient to form a belief.

**Purported Notice to Terminate**

107. On or about August 19, 2022, Seven Tier served Plaintiff with a purported 90-day notice of termination of her tenancy.

Answer: Denies knowledge or Information Sufficient to form a belief.

108. The notice contained no grounds for good cause. It merely stated in part that: "the landlord ...hereby elects not to renew your tenancy and further elects to terminate your tenancy as of November 30 2022..." (See Exhibit 5).

Answer: Denies knowledge or Information Sufficient to form a belief.

109. Seven Tier served the same notice upon CDCLI.

Answer: Denies knowledge or Information Sufficient to form a belief.

110. Defendant Barry accepted the notice as adequate.

Answer: Denies knowledge or Information Sufficient to form a belief.

111. On or about December 4, 2022, Seven Tier filed a summary eviction petition against Plaintiff under RPAPL §711, the state holdover statute.

Answer: Denies knowledge or Information Sufficient to form a belief.

112. The petition mentioned nothing of the Plaintiff's HCV status and nothing about her right to its showing of good cause because of that status, in violation of RPAPL §741.

Answer: Denies knowledge or Information Sufficient to form a belief.

**Result**

113. On or about January 29, 2023, Plaintiff was forced to flee her home with her children.

Answer: Denies knowledge or Information Sufficient to form a belief.

**II. TENANCY AT 374 DONALD BLVD (DEFENDANT MANGINO)**

114. Plaintiff hereby incorporates and realleges paragraphs 1 through 113 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

115. On or about February 1, 2023, Plaintiff moved into 374 Donald Blvd, Holbrook, New York, owned or managed by Defendant John Mangino. Plaintiff and Mangino entered into a written lease for a one-year term.

Answer: Admit there was a lease with a one-year term.

116. Mangino included a clause that stated that lease renewals would be for successive terms of one year.

Answer: Admit there was a clause with similar language except believes it was inserted by the government officials administering the program.

117. Mangino also included a clause that stated that at the end of the term, Plaintiff would "peacefully surrender" the premises to him.

Answer: Admit there were clauses with similar language except believes it was inserted by the government officials administering the program.

118. CDCLI executed a HAP contract with Mangino corresponding to that lease term.

Answer: Admit.

**Failure to Renew Leases**

119. Said lease term expired on January 31, 2024.

Answer: Admit.

120. Mangino did not offer Plaintiff written lease renewals for 2024, 2025 or 2026.

Answer: Admit except continued tenancy was accepted for a period in 2024.

121. Mangino did not execute a renewed HAP contract with CDCLI, or certify that he had complied with the statute and regulation.

Answer: Denies to the extent that Mangino did what HAP & CDCLI required which continued or renewed to the extent and under the terms they described.

122. Defendant Phraner continued processing HAP payments for Mangino for approximately 22 months.

Answer: Denies knowledge or Information Sufficient to form a belief except admits that payments continued although after a point in time the payments were rejected and returned each month.

123. These actions violated 42 U.S.C.A. § 1437f(o)(7)(A) and 24 C.F.R. §§ 982.308, 982.309, and 982.305.

Answer: Denies upon information and belief and refers all questions of law to the Court.

124. During this same period, Phraner issued Improper Attempt to Shift Maintenance Obligations.

Answer: Denies knowledge or Information Sufficient to form a belief.

125. After Plaintiff moved into the property, Mangino asked Plaintiff to enter into a service contract with Traegor Fuel Supply, for maintenance of the boiler.

Answer: Admit, except that defendant recommended a means of getting delivery which would also result in a free service contract thus being for the tenants benefit and safety but the recommendation was not required and not accepted by plaintiff. Subsequently a result of plaintiff's numerous violations of her obligations under the lease, damages she was causing, and increased risk of harm and danger to the occupants of the premises Mangino offered to pay for a service contract and even offered a payment plan for automatic delivery at a price which was less than she was paying which plaintiff did not accept. Instead plaintiff insisted on continuing to put inadequate amounts of fuel into the oil burner.

126. Mangino stated that he "didn't need to be getting phone calls at 3 a.m." regarding boiler issues.

Answer: Admit that similar sentiment was expressed in a constructive context for the benefit of the tenants.

127. Mangino repeatedly attempted to compel Plaintiff to enter this improper service contract, which would unlawfully shift boiler maintenance obligations to her, in violation of the HQS.

Answer: Denies.

128. Plaintiff refused to enter into such a contract and informed Mangino that maintenance of the boiler was the landlord's responsibility.

Answer: Admit plaintiff refused to permit a service contract except defendant specifically denies plaintiffs attempt to shift plaintiff's own obligations to keep

sufficient amount of oil in the burner to keep it functioning properly, safely and without causing damage to the oil burner and all the safety concerns that run with plaintiff's abuse to the defendants equipment and the damages and extra expense that results directly from the plaintiff's unequivocal responsibility to keep sufficient amount of oil to permit the oil burner to operate without continually running to low or dry.

**Escalation and Harassment**

129. Mangino responded with escalating hostility, including repeated accusatory texts, phone calls, and statements such as "Don't blame me for your life" and "you're being very difficult."

Answer: Admit, except denies this was escalating hostility on the part of the defendant and more of an accurate expression of opinion due to the hostile nature and manner in which plaintiff was confronting defendant and rejecting defendant's attempts to assist in preventing a continued problem.

130. Mangino continued sending lengthy and hostile communications despite Plaintiff's repeated requests that he stop.

Answer: Denies, plaintiff continued the communications and other communications were necessitated directly because of communications plaintiff continued to institute.

**Boiler Failure and Code Enforcement**

131. Mangino did not have the boiler cleaned or serviced in 2024 or 2025.

Answer: Denies, the boiler was service as needed.

132. On or about August 11, 2025, the boiler failed for the third time.

Answer: Admit upon information and belief.

133. Plaintiff notified Mangino.

Answer: Admit upon information and belief.

134. Mangino sent a service person, but after the service person assessed the problem Mangino refused to fix the boiler.

Answer: Admit that the service person determined there was insufficient oil in the burner and therefore could not be rectified at that time until a delivery of oil was completed, something the plaintiff was directly responsible for, and admit that defendant then refused initially to pay for the repair because it was caused directly by plaintiff's negligence except that when plaintiff refused to accept the problem was caused by plaintiff's own conduct, the defendant did in fact have it serviced again and made operational.

135. At that point, Plaintiff contacted the Town of Islip Code Enforcement.

Answer: Admit upon information and belief.

136. The Town inspector determined that there was no hot water and directed Mangino to repair the boiler.

Answer: Denies. The inspector issued a ticket and defendant went to court and had the ticket dismissed precisely for the reasons stated herein.

137. Mangino refused to comply.

Answer: Denies, after plaintiff arranged for an oil delivery defendant arranged to have the boiler bled and started.

**Physical Confrontation and Continued Harassment**

138. On the same day, Mangino came to the Plaintiff's home and relentlessly pounded on the door, demanding that Plaintiff accept a "deal" for the service contract, or else she "had to go."

Answer: Denies, except admits that defendant went to plaintiff's apartment, knocked on the door, and while communicating through the closed door because plaintiff would not open it, the defendant communicated words to effect that she needed a better way to have sufficient oil kept in the burner, that she was damaging the burner, causing unnecessary and repetitive need for repairs and service calls, and increasing the risk and safety to the occupants by continuing to run the boiler with insufficient oil, and that if she did not correct this problem she would have to leave.

139. Mangino refused to leave until Plaintiff indicated she would call the police.

Answer: Denies.

140. Plaintiff contacted law enforcement.

Answer: Denies knowledge or Information Sufficient to form a belief and notes that, if that is true, at no point has defendant ever been contacted by police regarding anything to do with plaintiff.

141. Mangino finally fled the premises.

Answer: Denies that defendant fled, rather after communicating the obligations that plaintiff needed to comply with the conversation ended and defendant left.

142. Mangino immediately resumed sending hostile texts, including "I'm sorry, but you're leaving."

Answer: Denies plaintiff's characterization but, after refusal to acknowledge the plaintiff's responsibilities or otherwise cooperate, there were in fact legal proceedings and communications indicating that the plaintiff's tenancy at these premises was going to end.

**Conditions of the Home**

143. As a result of Mangino's failure to repair the boiler, Plaintiff and her family were without hot water for approximately 5 days.

Answer: Denies, except that defendant would not have knowledge how long the boiler was not working because of insufficient oil, but, within approximately a day or two after the complaint it was fixed.

144. Plaintiff and her family were forced to stay in hotels or travel to relatives' homes for basic necessities, including bathing.

Answer: Denies knowledge or Information Sufficient to form a belief.

**CDCLI Inspection and Findings**

145. On or about August 15, 2025, Plaintiff reported Mangino to CDCLI.

Answer: Denies knowledge or Information Sufficient to form a belief.

146. On or about August 16, 2025, CDCLI conducted an inspection.

Answer: Denies knowledge or Information Sufficient to form a belief but suspects that is accurate.

147. The inspector found Mangino at fault for the condition of the boiler.

Answer: Denies, as upon information and belief plaintiff misrepresented the facts to the inspector including but not limited to failing to inform that plaintiff had then added the oil that was missing. No inspector ever rendered an opinion, finding or direction that defendant was responsible for the insufficient oil that plaintiff caused, or that as a result of plaintiff's conduct the defendant was still at fault for the condition of the boiler.

148. Only after this finding did Mangino complete the necessary repairs.

Answer: Denies there was any such finding that caused defendant to fix the boiler and upon information and belief the decision to fix the boiler had already been made prior to anything connected with the CDCLI

**Purported Notice to Terminate**

149. On or about August 19, 2025, Mangino served Plaintiff with a purported 90- Day "Notice of Termination of Tenancy of Non-Regulated Residences". (See Exhibit 6)

Answer: Admit.

150. The notice contained no grounds for good cause and explicitly asserted that Plaintiff had "no right to a showing of good cause".

Answer: Admit.

151. Mangino served the same notice upon CDCLI.

Answer: Admit.

152. Defendant Phraner accepted the notice as adequate.

Answer: Denies knowledge or Information Sufficient to form a belief.

153. On or about November 29, 2025, Mangino texted the Plaintiff that he was aware that Phraner had sent her a "Notice of Overhousing", while insisting that she vacate the premises by midnight the next day.

Answer: Admit.

154. On or about January 9, 2026, Mangino filed a summary eviction to remove the Plaintiff, claiming that Plaintiff was a month-to-month tenant and a holdover, (See Exhibit 7).

Answer: Admit.

**III. CDCLI CONDUCT- PHARNER (EMAIL ADMISSIONS)**

155. Plaintiff hereby incorporates and realleges paragraphs 1 through 154 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

156. On August 27, 2025, Plaintiff informed Phraner that Mangino had been harassing her, including the police incident.

Answer: Denies knowledge or Information Sufficient to form a belief.

157. She also explained how Mangino was attempting to force her to obtain a contract to assume the maintenance responsibility of the boiler for approximately 3 years, and that Mangino was threatening to evict her because she refused to do so.

Answer: Denies knowledge or Information Sufficient to form a belief.

158. Plaintiff explicitly stated that the email was a formal request for assistance regarding harassment and retaliation.

Answer: Denies knowledge or Information Sufficient to form a belief.

159. Phraner responded that such issues were outside CDCLI's scope of responsibility and directed Plaintiff to seek legal counsel.

Answer: Denies knowledge or Information Sufficient to form a belief.

160. Phraner attached a move-out packet to her response.

Answer: Denies knowledge or Information Sufficient to form a belief.

**Statements Confirming CDCLI Policy**

161. On September 15, 2025, Phraner sent the Plaintiff an email, confirming that Mangino had: "provided [her] a 90-day Notice of Non-Renewal of Lease, which he was `legally entitled to do'". (See Exhibit 8).

Answer: Denies knowledge or Information Sufficient to form a belief.

162. She also stated: "If you choose not to vacate the unit upon the lease's expiration, the landlord has indicated that he will 'initiate the eviction process at that point to regain possession of the property."

Answer: Denies knowledge or Information Sufficient to form a belief.

163. On September 16, 2025, Plaintiff requested on email that Phraner identify any law permitting continuation of a HAP contract without a written lease.

Answer: Denies knowledge or Information Sufficient to form a belief.

164. Phraner responded: "We would like to clarify that, per CDCLI guidelines, a new Housing Assistance Payments (HAP) contract is not required to be completed each year. The original HAP contract remains in effect for the duration of your tenancy..." (See Exhibit 9).

Answer: Denies knowledge or Information Sufficient to form a belief.

165. She stated on November 4: "[I]f a new yearly lease is not signed, the tenancy automatically converts to a month-to-month arrangement under standard leasing terms." See (Exhibit 10).

Answer: Denies knowledge or Information Sufficient to form a belief.

**Refusal to Provide the HAP Contract**

166. On November 3, 2025, Plaintiff emailed Phraner asking for a copy of the expired HAP contract.

Answer: Denies knowledge or Information Sufficient to form a belief.

167. On November 4, 2025, Phraner responded that the HAP contract was "between CDCLI and the landlord" and that it would "remain so". (See Exhibit 10).

Answer: Denies knowledge or Information Sufficient to form a belief.

168. Phraner added: "If you would like to know when your lease is up, I would encourage you to contact your landlord for that information."

Answer: Denies knowledge or Information Sufficient to form a belief.

**Awareness that the Laws Were Being Violated**

169. Plaintiff informed Phraner, complete with all the laws and regulations, that the tenancy was not in compliance with said laws. She explicitly stated to Phraner that her housing security was in jeopardy because of this.

Answer: Denies knowledge or Information Sufficient to form a belief.

**Admission of Missing Lease**

170. On November 3, 2025, Phraner• replied to Plaintiff confirming that the only written lease that CDCLI had on file was from 2023. This was in violation of 24 C.F.R. § 982.158(e)(1).

Answer: Denies knowledge or Information Sufficient to form a belief.

**The Landlord's Choice**

171. On November 4, 2025, Phraner stated: "As for your lease, it is the responsibility of both the tenant and the landlord to ensure that a valid lease is in place each year, *if that is what the landlord chooses.* (See Exhibit 10)

Answer: Denies knowledge or Information Sufficient to form a belief.

172. Phraner stated: [Y]our landlord has *chosen* not to renew your lease, *which is within his rights* once your lease term has ended. If you choose not to vacate the unit and

return the property to the landlord, he also has the legal right to initiate an eviction process to regain possession of the property."

Answer: Denies knowledge or Information Sufficient to form a belief.

173. Defendant Phraner engaged in an at least 50-page email exchange with Plaintiff, fiercely defending CDCLI's manufactured standard of operating procedures.

Answer: Denies knowledge or Information Sufficient to form a belief.

174. Phraner then escalated the matter to the Assistant Director, Defendant Hayes.

Answer: Denies knowledge or Information Sufficient to form a belief.

175. On or about November 30, 2025, Phraner sent the Plaintiff a "Notice of Overhousing", attempting to aid Defendant Mangino with a "self-help eviction", stating:

"Based on the subsidy standards for the Housing Choice Voucher Program, your voucher size is for a 2-bedroom unit, but you are currently living in a 3-bedroom unit. This means that your family is over-housed, or lives in a home larger than is allowed. You must make arrangements to move to a 2 bedroom unit immediately. If a 2 bedroom unit is not available in your housing complex, you must submit the following certification from your landlord within 10 business days."

Answer: Denies knowledge or Information Sufficient to form a belief.

176. The Plaintiff responded that she was entitled to an informal hearing, pursuant to 24 CFR §982.555, before such adverse action could be taken against her. (See Exhibit 11).

Answer: Denies knowledge or Information Sufficient to form a belief.

177. Phraner then claimed that the notice was sent in error.

Answer: Denies knowledge or Information Sufficient to form a belief.

178. Phraner also enclosed a new purported amendment for 2026 in the envelope with the notice.

Answer: Denies knowledge or Information Sufficient to form a belief.

**IV. POLICYMAKER RATIFICATION- HAYES**

179. Plaintiff hereby incorporates and realleges paragraphs 1 through 178 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

180. On November 13, 2025, Hayes responded to the email thread for the first time, speaking only to Phraner and informing her that she would be holding a team meeting on November 17, 2025.

Answer: Denies knowledge or Information Sufficient to form a belief.

**Admission of Missing Lease**

181. On December 3, 2025, Hayes emailed Plaintiff in a response to her request for a follow up, stating: "Per NYS HCR program rules, the public housing agency cannot require a private landlord to renew a lease." (See Exhibit 12).

Answer: Denies knowledge or Information Sufficient to form a belief.

182. She then confirmed that she had received Mangino's "90-day non-renewal notice".

Answer: Denies knowledge or Information Sufficient to form a belief.

183. Hayes goes on to state that Mangino had "chosen not to renew the lease".

Answer: Denies knowledge or Information Sufficient to form a belief.

**Move-Out Packet and Legal Counsel**

184. Hayes then advises that Plaintiff seek counsel, begin searching for a new home and utilize the move-out packet that Phraner provided her.

Answer: Denies knowledge or Information Sufficient to form a belief.

185. She concludes this email with "All other concerns and issues have been addressed directly by the assigned housing specialist", referring to Phraner. "If you have any questions or need support during your move process, please feel free to contact Delores. Thank you."

Answer: Denies knowledge or Information Sufficient to form a belief.

**Ratification**

186. On December 4, Hayes ratifies the custom by declaring: "[lit appears that you are on a month-to-month in this unit." (See Exhibit 13).

Answer: Denies knowledge or Information Sufficient to form a belief.

187. Hayes then characterizes the matter as one where Plaintiff is simply not satisfied with their responses.

Answer: Denies knowledge or Information Sufficient to form a belief.

**Altering the Regulation**

188. Hayes continues by attempting to alter the verbiage of 24 CFR §982.308(b)(1) by inserting the words "before the initial term of the lease" into the regulation.

Answer: Denies knowledge or Information Sufficient to form a belief.

**Google Research**

189. Hayes also cites 24 C.F.R. § 982.305(a)(3), in her attempt to further argue CDCLI's custom and refute the explicit verbiage of this subsection. Hayes instead argues 24 C.F.R. §982.305(c)(1), the time in which a PHA must use its best efforts to execute a HAP contract.

Answer: Denies knowledge or Information Sufficient to form a belief.

190. Hayes then claims that she has "reviewed the federal regulations" that Plaintiff cited and instructs Plaintiff to click on the links which she "highlighted in blue" for her to review the "full context".

Answer: Denies knowledge or Information Sufficient to form a belief.

191. Upon clicking the first paragraph highlighted in blue, Plaintiff found that it was a Google link, leading to **the** results of the search terms "HUD**-** prescribed tenancy addendum".

Answer: Denies knowledge or Information Sufficient to form a belief.

192. The second paragraph was a Google link leading to the search terms: "24 C.F.R. §982.305(a)(3)" which brings up the Cornell Law School website, with 24 C.F.R. §982.305(c)(3) highlighted.

Answer: Denies knowledge or Information Sufficient to form a belief.

193. Hayes then advises Plaintiff to provide Phraner with the paperwork showing the outcome of the eviction once she receives it and concludes the email with: "Thank you and have a good day."

Answer: Denies knowledge or Information Sufficient to form a belief.

194. Plaintiff received no further contact from Hayes.

Answer: Denies knowledge or Information Sufficient to form a belief.

**V. CONDUCT- DEFENDANT ZAWYRUCHA**

195. Plaintiff hereby incorporates and realleges paragraphs 1 through 194 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

196. On or about December 4, 2025, Defendant Thomas S. Zawyrucha filed a summary eviction petition in the 5th District Court of Suffolk County (the 5th District) before Judge Stephen L. Ukeiley (Judge Ukeiley), to evict the Plaintiff from her 374 Home.

Answer: Admits upon information and belief.

197. Zawyrucha deliberately failed to state in the petition that the Plaintiff was a Section 8 tenant.

Answer: Denies knowledge or Information Sufficient to form a belief.

198. As a Section 8 tenant, Plaintiff was entitled to predicate notice stating the grounds upon which Defendant Mangino was initiating the summary eviction under 24 CFR §982.310 and under RPAPL §741. Zawyrucha was required to state the Plaintiffs interest in this regard.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

199. Failure to do either is failure to state a claim and jurisdictionally fatal.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

200. On February 5, 2026 Plaintiff attempted to file a Motion to Dismiss, asserting the same, *inter alia,* with the 5th District's Clerk's Office.

Answer: Denies knowledge or Information Sufficient to form a belief.

201. The day before, a clerk in said office had advised the Plaintiff that she could notarize and file her papers at the Clerk's window, so long as she had one of the covers from the court. The same clerk advised her to arrive at 9:15 a.m. to have enough time to do so, before calendar call.

Answer: Denies knowledge or Information Sufficient to form a belief.

202. Upon arrival at the courthouse, Plaintiff was informed by a different Clerk that her papers could not be accepted for filing, because the matter was on the calendar to be heard that same day.

Answer: Denies knowledge or Information Sufficient to form a belief.

203. When the case was called, the Plaintiff informed the Court that she had her papers, but had been turned away at the Clerk's window.

Answer: Denies knowledge or Information Sufficient to form a belief.

204. Subsequently, Judge Ukeiley accepted her papers in hand and Defendant Mangino's counsel, Defendant Zawyrucha, (Zawyrucha) accepted service thereof in open court.

Answer: Denies knowledge or Information Sufficient to form a belief.

205. The hearing concluded with Judge Ukeiley ordering the parties into a briefing schedule, which was: Plaintiffs Response was due on March 5, 2026; Zawyrucha's Reply was due March 12, 2026 and thereafter, Judge Ukeiley stated that he would make a decision.

Answer: Denies knowledge or Information Sufficient to form a belief.

206. The Plaintiff remained in the courtroom for the entirety of the February 5 proceeding.

Answer: Denies knowledge or Information Sufficient to form a belief.

207. Judge Ukeiley did not set a hearing or appearance date for the Motion to Dismiss and explicitly informed the Plaintiff that she neither had to appear on March 5, nor March 12, 2026.

Answer: Denies knowledge or Information Sufficient to form a belief.

208. There was no second call for the matter, Judge Ukeiley set no adjournment date for February 26, 2026.

Answer: Denies knowledge or Information Sufficient to form a belief.

209. Under CPLR § 2101(f) Defendant Zawyrucha had fifteen days from February 5, 2025, the day the Motion to Dismiss and Answer were served upon him, to return the Motion to Dismiss and Answer and Counterclaim to the Plaintiff with his statement of objections.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

210. Zawyrucha neither returned the aforesaid papers nor objected before expiration of the fifteen days, which was February 20, 2026.

Answer: Denies knowledge or Information Sufficient to form a belief.

211. Instead, on the day of the February 5, 2026 hearing, after the Plaintiff had already left the courthouse as the session had ended for the day, Zawyrucha waited around to have a "second call" with Judge Ukeiley, without the Plaintiff.

Answer: Denies knowledge or Information Sufficient to form a belief.

212. Zawyrucha appeared during the purported "second call", before Judge Ukeiley, without the Plaintiff and asserted to the Judge, referring to the Plaintiff's papers: "Your Honor, the -- the papers that were submitted to the Court, the answer and the motion, are unsigned and they weren't notarized... So, I got a problem." (See Exhibit 14, February 5, 2026 Transcripts, Pg. 7, Lines 15-17 and Line 19.)

Answer: Denies knowledge or Information Sufficient to form a belief except does not dispute what any transcript may state.

213. Judge Ukeiley responded: "So let's do a court to notify." (See Exhibit 14, February 5, 2026 Transcripts, Pg. 8 Line16.)

Answer: Denies knowledge or Information Sufficient to form a belief except does not dispute what any transcript may state.

214. Judge Ukeiley went on to state: "Direct appearances are required and please put in the Court's note that the respondent's motion papers are rejected as having been unsigned and that appearance is required." ( See Exhibit 14, February 5, 2026 Transcripts, Pg. 8 Lines 16-19.)

Answer: Denies knowledge or Information Sufficient to form a belief except does not dispute what any transcript may state.

*215.* The Judge then instructed Defendant Zawyrucha: "So Mr. Zawyrucha, it may be good if or it may be wise if you send a notice to the respondent as well, *just stating that there is a court appearance* on -- for 22 February 26th, the reason being is that the motion papers were not signed by the respondent." (See Exhibit 14, Transcripts, February 5, 2026 Pg. 8, Lines 20-24.)

Answer: Denies knowledge or Information Sufficient to form a belief except does not dispute what any transcript may state.

216. Judge Ukeiley took care not to mention that he was rescinding his original briefing schedule, but the Clerk forced him to do so on the record.

Answer: Denies knowledge or Information Sufficient to form a belief.

217. The Clerk asked: "So we're rescinding the original schedule for the opposition and the reply?" (See Exhibit 14, Transcripts, February 5, 2026, Pg. 9 Lines 8-9.)

Answer: Denies knowledge or Information Sufficient to form a belief except does not dispute what any transcript may state.

218. Judge Ukeiley then answered: "I'm rescinding that. Yeah." ( See Exhibit 14, Transcripts, February 5, 2026, Pg. 9 Line 10.)

Answer: Denies knowledge or Information Sufficient to form a belief except does not dispute what any transcript may state.

219. Zawyrucha responded: "Thank you, Your Honor." (See Exhibit 14, Transcripts Pg. 9 Line 12.)

Answer: Denies knowledge or Information Sufficient to form a belief except does not dispute what any transcript may state.

220. On or about February 11, 2026, Plaintiff received Zawyrucha's letter simply stating that Judge Ukeiley was requesting that the parties were to appear in court on the 20[11] of February, because the Plaintiff's papers were not signed.

Answer: Denies knowledge or Information Sufficient to form a belief.

221. On or about February 15, 2026, Plaintiff received a letter from the [Stn] District Court's Clerk, informing her of the same.

Answer: Denies knowledge or Information Sufficient to form a belief.

222. Neither letter informed the Plaintiff that the Zawyrucha had appeared without her at purported "second call", and obtained an oral order by way of this *ex parte* communication, from Judge Ukeiley, rescinding the original briefing schedule.

Answer: Denies knowledge or Information Sufficient to form a belief.

223. On or about February 17, 2026 Plaintiff filed a Motion to Cure Irregularities to fix the unsigned papers and requested that Judge Ukeiley accept her papers *nunc pro tune,* as he was required to do under state statute and caselaw.

Answer: Denies knowledge or Information Sufficient to form a belief.

224. That same day Plaintiff learned from the same Clerk that had refused to take her papers on February 5t$^{h}$, that Zawyrucha had appeared at a "second call" and had supposedly "adjourned" the February 5th hearing.

Answer: Denies knowledge or Information Sufficient to form a belief.

225. On or about February 21, 2026, Plaintiff filed an Order to Show Cause to stay the February 26, hearing, asserting that: Zawyrucha had obtained it improperly, without notice to her or an opportunity to be heard, finding that Zawyrucha had waived his right to object to the unsigned papers and was therefore in default on responding to her Motion to Dismiss and requesting that Judge Ukeiliey accept her papers *nunc pro tunc.*

Answer: Denies knowledge or Information Sufficient to form a belief.

226. Judge Ukeiley did not respond before February 26, 2026.

Answer: Denies knowledge or Information Sufficient to form a belief.

227. During the hearing on February 26th, the Court Clerk stated: "Number 60 John Mangino versus Kyung Trotter." (See Exhibit 15, Transcripts, February 26, 2026 Pg. 2, Lines 1-2.)

Answer: Denies knowledge or Information Sufficient to form a belief except does not dispute what any transcript may state.

228. Summary eviction cases are called by number in the 5th District Court.

Answer: Denies knowledge or Information Sufficient to form a belief.

229. Zawyrucha stated to Judge Ukeiley: "Your Honor, Application". (See Exhibit 15, See Transcripts, February 26, 2026 Pg. 2, Line 3.)

Answer: Denies knowledge or Information Sufficient to form a belief except does not dispute what any transcript may state.

230. Judge Ukeiley replied: "Yeah, come up." (See Exhibit 15, Transcripts, February 26, 2026 Pg. 2, Line 4.)

Answer: Denies knowledge or Information Sufficient to form a belief except does not dispute what any transcript may state.

231. The Court Clerk stated: "That would be 60, 70 and 71." (See Exhibit 15, Transcripts, February 26, 2026 Pg. 2, Line 5.)

Answer: Denies knowledge or Information Sufficient to form a belief except does not dispute what any transcript may state.

232., Zawyrucha replied: "I agree." (See Exhibit 15, Transcripts, February 26, 2026 Pg. 2, Line 6.

Answer: Denies knowledge or Information Sufficient to form a belief except does not dispute what any transcript may state.

233. The Clerk stated: "Yes. That's it." (See Exhibit 15, Transcripts, February 26, 2026 Pg. 2, Line 7.)

Answer: Denies knowledge or Information Sufficient to form a belief except does not dispute what any transcript may state.

234. Zawyruch asked: "It's all one index number, right?" (See Exhibit 15, Transcripts, February 26, 2026 Pg. 2, Line 9.)

Answer: Denies knowledge or Information Sufficient to form a belief except does not dispute what any transcript may state.

235. The Clerk replied: "Yes." (See Exhibit 15, Transcripts, February 26, 2026 Pg. 2, Line 10.)

Answer: Denies knowledge or Information Sufficient to form a belief except does not dispute what any transcript may state.

236. Judge Ukeiley announced: "All right. So Mr. Zawyrucha, your appearance for the record." (See Exhibit 15, Transcripts, February 26, 2026 Pg. 2, Lines 11-12.)

Answer: Denies knowledge or Information Sufficient to form a belief except does not dispute what any transcript may state.

237. Zawyrucha had not filed a written motion requesting more time to respond to the Plaintiff's Motion to Dismiss. Instead, he requested it orally at the February 20 hearing.

Answer: Denies knowledge or Information Sufficient to form a belief.

238. Judge Ukeiley granted Zawyrucha 3 additional weeks to respond to the Plaintiff's Motion to Dismiss, without a written application which would have included notice to

the Plaintiff, before said hearing and an opportunity to be heard as to any alleged grounds for good cause to be granted more time, asserted by Zawyrucha.

Answer: Denies knowledge or Information Sufficient to form a belief.

239. Judge Ukeiley scribbled a note on the Plaintiff's Order to Show Cause (OSC), simply stating that he was declining to sign it because "there was no basis for it".

240. Judge Ukeiley did not issue a written order explaining his reasoning or what documents he had considered.

Answer: Denies knowledge or Information Sufficient to form a belief.

241. Judge Ukeiley placed Zawyrucha at a procedural advantage, by allowing the February 26, 2026 hearing to move forward by way of not addressing the Plaintiff's OSC.

Answer: Denies knowledge or Information Sufficient to form a belief.

242. On March 4, 2026, Plaintiff filed a proposed order to declare her Motion to Cure moot.

Answer: Denies knowledge or Information Sufficient to form a belief.

243. Judge Ukeiley did not respond, sign the proposed order or issue an order of his own on the Motion to Cure.

Answer: Denies knowledge or Information Sufficient to form a belief.

244. Plaintiff filed a request for a written order on her OSC, pursuant to CPLR §2219.

Answer: Denies knowledge or Information Sufficient to form a belief.

245. Judge Ukeiley did not respond or issue a written order on the OSC.

Answer: Denies knowledge or Information Sufficient to form a belief.

246. On or about March 10, Plaintiff filed a written objection to the improper extension of time and requested a written order, explaining Judge Ukeiley's reasoning for the extension.

Answer: Denies knowledge or Information Sufficient to form a belief.

247. Judge Ukeiley did not respond or issue a written order for the extension he granted Zawyrucha.

Answer: Denies knowledge or Information Sufficient to form a belief.

248. Zawyrucha then submitted his untimely response.

Answer: Denies knowledge or Information Sufficient to form a belief.

249. On or about April 17, 2026 Judge Ukeiley issued a conclusory order, claiming to have considered all of the Plaintiff's motions and papers, and declaring that her Motion to Dismiss was denied.

Answer: Denies knowledge or Information Sufficient to form a belief.

250. He also claimed that Defendant Mangino had stated a viable claim, with no reasoning whatsoever.

Answer: Denies knowledge or Information Sufficient to form a belief.

251. Judge Ukeiley referred to the at least 20 procedural assertions and defenses by the Plaintiff as "material issues of disputed facts" which needed to be addressed at a trial, instead of matters of law.

Answer: Denies knowledge or Information Sufficient to form a belief.

252. He set a date for May 21st, wherein "the proceeding shall be scheduled for a conference".

Answer: Denies knowledge or Information Sufficient to form a belief.

## CAUSES OF ACTION

### COUNT I: 42 U.S.C. §1983 DEPRIVATION OF PROPERTY INTEREST IN HCV BENEFIT WITHOUT PROCEDURAL DUE PROCESS- DEFENDANT SEVEN TIER, LP

253. Plaintiff hereby incorporates and realleges paragraphs 1 through 252 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

254. Plaintiff possesses a property interest in her housing voucher benefit. 42 U.S.C. §1437f and 24 C.F.R. § 982 secures her I-ICV benefit, by providing that both contracts required in the framework are executed coterminously.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

255. The statute and regulation also provide that a lease must contain a renewal clause, be written and for a term not less than one year.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

256. This is not an abstract need, desire or unilateral expectation. It is a government created entitlement, which cannot be deprived without due process.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

257. The LA cannot lawfully terminate a voucher, which is the functional result of the absence of a valid lease, without providing the formal hearing required by federal regulations.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

258. Thus, CDCLI employees may not lawfully obtain the practical effect of termination of the Plaintiff's benefit, by applying the month to month custom in place of the hearing, to get the same end result of no lease.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

259. Due process forbids the government from accomplishing indirectly, through administrative circumvention, what it could not do directly without constitutionally adequate procedure. *Goldberg v. Kelly,* 397 U.S. 254 (1970). *Mathews v. Eldridge,* 424 U.S. 319 (1976).

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

260. Defendant Seven Tier utilized CDCLI's "month-to-month" custom to effectuate the functional equivalent of terminating Plaintiff's HCV benefits.

Answer: Denies knowledge or Information Sufficient to form a belief.

261. The first written lease between Seven Tier and the Plaintiff expired on or about November 30, 2018.

Answer: Denies knowledge or Information Sufficient to form a belief.

262. Seven Tier did not offer a lease renewal for December 2018 to on or about March 2019, 2020, 2021 and 2022.

Answer: Denies knowledge or Information Sufficient to form a belief.

263. During this time Seven Tier did not certify that it had executed a written lease, with a TA included or its exact regulatory verbiage.

Answer: Denies knowledge or Information Sufficient to form a belief.

264. Seven Tier did not certify on a renewed HAP contract, that it was in compliance with the HQS.

Answer: Denies knowledge or Information Sufficient to form a belief.

265. It did not enter a renewed HAP contract, coterminous with a new written lease, for not less than one year.

Answer: Denies knowledge or Information Sufficient to form a belief.

266. Instead, after Barry recertified Plaintiff's eligibility for the benefit, Seven Tier accepted from Barry, so-called Housing Choice Voucher Program Contract and Tenancy

Addendum Amendment letters, for December 2018 to on or about March 2019, 2020, 2021 and 2022.

Answer: Denies knowledge or Information Sufficient to form a belief.

267. After receiving these purported amendments, Seven Tier accepted payments consistently, for on or about 4 years.

Answer: Denies knowledge or Information Sufficient to form a belief.

268. Barry stepped into Plaintiff's shoes, renegotiated the terms of the first written lease and agreed to rent increases with Seven Tier for on or about March 1, 2021 and December 1, 2022.

Answer: Denies knowledge or Information Sufficient to form a belief.

269. Barry then dictated the new terms to Plaintiff by sending her purported amendments.

Answer: Denies knowledge or Information Sufficient to form a belief.

270. Such forced Plaintiff to pay more rent that she had not agreed to and had every right to reject.

Answer: Denies knowledge or Information Sufficient to form a belief.

271. Barry then processed these increased payments to Seven Tier, for the years 2021 and 2022.

Answer: Denies knowledge or Information Sufficient to form a belief.

272. Seven Tier collected said increased payments.

Answer: Denies knowledge or Information Sufficient to form a belief.

273. The constitutional protection is not defeated simply because payments continued to flow. Where Seven Tier and Barry acted jointly to maintain the appearance of continued assistance, while stripping away the statutory and regulatory architecture that confers the benefit's protections for the Plaintiff, Defendants deprived the Plaintiff of the legally protected benefit in substance.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

274. Seven Tier, acting knowingly and willingly with Bally, therefore violated Plaintiff's Fourteenth Amendment right to procedural due process, by accomplishing the same result indirectly through the month-to-month custom and the purported amendments, while preserving the voucher nominally to continue receiving payments from the government.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

**DEFENDANT BARRY**

275. Plaintiff hereby incorporates and realleges paragraphs lthrough 274 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

276. Defendant Barry's conduct constituted an unlawful "end-run" around the Housing Choice Voucher (HCV) protections and thereby deprived Plaintiff of her protected property interest in her HCV benefit, without constitutionally required process.

Answer: Denies knowledge or Information Sufficient to form a belief.

277. Barry admitted that she was applying CDCLI's custom, instead of the required structure, stating: "As you recertify with our program, we continue to renew our cont[r]act (the HAP contract) with the landlord."

Answer: Denies knowledge or Information Sufficient to form a belief.

278. During annual recertifications Barry, acting under color of law and in her official capacity for CDCLI, routinely applied and enforced the month-to-month custom in place of the required lease-renewal and tenancy-addendum structure.

Answer: Denies knowledge or Information Sufficient to form a belief.

279. Barry implemented the custom by issuing so-called Housing Choice Voucher Program and Tenancy Addendum Amendments, after each recertification for the period of:

- December 1, 2018, to December 2019
- December 1, 2019-2020
- December 1, 2020- 2021
- On or about March 1, 2021-December 1, 2022, and such was signed by Marianne Scopo, the Assistant Director, Rental Assistance at the time.

- December 1, 2022, through December 1, 2023, and such was signed by Mildred Rivera, Vice President, Rental Assistance.

Answer: Denies knowledge or Information Sufficient to form a belief.

280. Without Plaintiff's mutual assent or any executed renewal leases, Barry agreed to Seven Tier's unilateral rent increases on December 1, 2021 (from $2,082 to $2,368) and December 1, 2022 (from $2,368 to $2,485).

Answer: Denies knowledge or Information Sufficient to form a belief.

281. Barry processed HAP payments to Seven Tier when it had not offered, entered into or executed renewal leases with Plaintiff for 2018, 2020, 2021 and 2022.

Answer: Denies knowledge or Information Sufficient to form a belief.

282. Barry processed said payments for approximately forty-eight months, to include the aforesaid rent increases.

Answer: Denies knowledge or Information Sufficient to form a belief.

283. Barry allowed Seven Tier to offload his HQS responsibility onto Plaintiff for said years.

Answer: Denies knowledge or Information Sufficient to form a belief.

284. Barry defended Seven Tier regarding its abandonment of its I-IQS responsibilities stating: "You do...have a point of contact...the point of contact works with the landlord directly."

Answer: Denies knowledge or Information Sufficient to form a belief.

285. Barry basically told Plaintiff that if she did not like how CDCLI operated, she could always surrender her voucher, by stating: "You may withdraw from this program".

Answer: Denies knowledge or Information Sufficient to form a belief.

286. Barry minimized the magnitude of depriving Plaintiff of her property interests with an apology to Plaintiff that things simply "[had] changed in the last two years".

Answer: Denies knowledge or Information Sufficient to form a belief.

287. Barry's acts and admissions obtained the functional equivalent of a termination of the Plaintiffs benefit for her 448 home, without the notice and the hearing required by due process.

Answer: Denies knowledge or Information Sufficient to form a belief.

288. Barry acting jointly with Seven Tier, violated Plaintiff's Fourteenth Amendment right to procedural due process. Said Defendants achieved the functional termination of her benefits through a month-to-month custom and unauthorized amendments, preserving the voucher only in name, to ensure the continued flow of government funds.

Answer: Denies knowledge or Information Sufficient to form a belief.

**DEFENDANT MANGINO**

289. Plaintiff hereby incorporates and realleges paragraphs 1 through 288 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

290. Mangino utilized CDCLI's month to month custom, which effectuated the functional equivalent of the termination of the Plaintiff's HCV voucher, while leaving the voucher nominally intact, so he could continue to receive payments.

Answer: Denies.

291. Mangino, acting jointly with Phraner, did not offer Plaintiff written lease renewals, including the TA for 2024, 2025 or 2026,

Answer: Denies.

292. Mangino did not certify on a renewed HAP contract, coterminous with a renewed lease, that he had complied with all the statutory and regulatory requirements, which would afford him the right to receive rent payments from CDCLI.

Answer: Denies.

293. Mangino acting jointly with Phraner, engaged in a unilateral bargaining process to raise Plaintiff's rent on or about October 28, 2025, from $3000 to $3250- even after Mangino had already served the Plaintiff with its purported termination notice.

Answer: Denies.

294. Mangino then accepted HAP payments processed by Phraner, without Plaintiff's mutual assent or executing written lease renewals with Plaintiff or certifying that he had done so.

Answer: Denies.

295. Mangino, accepted so-called Housing Choice Voucher Program Contract and Tenancy Addendum Amendments under the month to month custom, instead of the statutory and regulatory requirements, which protected Plaintiff's property interest in her benefit.

Answer: Denies.

296. Mangino, relentlessly, harassed Plaintiff and attempted to physically intimidate her into accepting his HQS responsibility for his boiler by obtaining a service contract in her name.

Answer: Denies.

297. Where Mangino and Phraner acted jointly to maintain the appearance of continued assistance, while stripping away the statutory and regulatory architecture that confers the voucher's protections for the Plaintiff, Defendants deprived the Plaintiff of the voucher's legally protected benefit in substance.

Answer: Denies.

298. Mangino, acting jointly with Phraner, therefore violated Plaintiff's Fourteenth Amendment right to procedural due process, by accomplishing the same result indirectly through the month-to-month custom, while preserving the voucher nominally to continue payments

Answer: Denies.

**DEFENDANT PHRANER**

299. Plaintiff hereby incorporates and realleges paragraphs lthrough 298 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

300. Defendant Phraner's conduct constituted an unlawful "end-run" around the Housing Choice Voucher (HCV) protections and thereby deprived Plaintiff of her protected property interest in her voucher, without constitutionally required process.

Answer: Denies knowledge or Information Sufficient to form a belief.

301. On November 4, 2025, Phraner admitted the existence and her implementation of CDCLI's custom, stating: “If a new yearly lease is not signed, the tenancy automatically converts to a month-to-month arrangement under standard leasing terms."

Answer: Denies knowledge or Information Sufficient to form a belief except that is consistent with what defendant was informed.

302. On September 15, 2025, she also stated, "We would like to clarify that, per CDCLI guidelines, a new Housing Assistance Payments (HAP) contract is not required to be completed each year. The original HAP contract remains in effect for the duration of your tenancy..."

Answer: Denies knowledge or Information Sufficient to form a belief.

303. Phraner, issued so-called Housing Choice Voucher Program and Tenancy Addendum Amendments, after each recertification for the periods of:

- February 1, 2024, through February 1, 2025
- February 1, 2025, through February 1, 2026, and
- February 1, 2026.

Answer: Denies knowledge or Information Sufficient to form a belief.

304. Phraner, stepped into Plaintiff's shoes and bargained with Mangino, to agree to an increase in rent on or about October 28, 2025, from $3,000 to $3,250.

Answer: Denies knowledge or Information Sufficient to form a belief.

305. Yet on November 3, 2025, when Plaintiff asked to see a copy of the purported current HAP contract, she remarked that it was: "between CDCLI and the landlord" and it would "remain so".

Answer: Denies knowledge or Information Sufficient to form a belief.

306. On November 3, 2025, she admitted that the only lease she had on file was the very first one from 2023.

Answer: Denies knowledge or Information Sufficient to form a belief.

307. She further admitted the same, advising Plaintiff: "If you would like to know when your lease is up, I would encourage you to contact your landlord for that information."

Answer: Denies knowledge or Information Sufficient to form a belief.

308. Phraner's acts and admissions obtained the functional equivalent of terminating Plaintiff's benefit for her 374 home, without the notice and the hearing required by due process.

Answer: Denies knowledge or Information Sufficient to form a belief.

309. Phraner, acting jointly with Mangino, violated Plaintiff's Fourteenth Amendment right to procedural due process. Defendants achieved the functional termination of her benefits through a month-to-month custom and unauthorized amendments, preserving the voucher only in name, to ensure the continued flow of government funds.

Answer: Denies.

**COUNT II: 42 U.S.C. §1983 DEPRIVATION OF PROPERTY INTEREST IN LEASEHOLD WITHOUT PROCEDURAL DUE PROCESS- SEVEN TIER, LP**

310. Plaintiff hereby incorporates and realleges paragraphs 1 through 309 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

311. As an HCV recipient, Ms. Trotter has a property interest in continuing her tenancy in her home. *Sinisgallo v. Town of Islip Haus. Auth.,* 865 F. Supp. 2d 307 (E.D.N.Y. 2012). *Walls v. Giuliani,* 916 F. Supp. 214 (E.D.N.Y. 1996). *Augusta v. Cmty. Dev. Corp. of Long Island, Inc.,* No. 07-CV-0361, 2008 WL 5378386 (E.D.N.Y. Dec. 23, 2008).

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

312. A property interest exists where rules or understandings from an independent source (statute, regulation, contract) create a legitimate entitlement, not a unilateral expectation.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

313. A required renewal clause creates a regulatory entitlement, not a private expectation.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

314. HUD rules require a renewal term in the lease.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

315. The PHA approves the lease because it contains that renewal term and the HAP contract incorporates and depends on that renewal structure.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

316. Thus, the Plaintiff's right to a renewal of her lease is a government-created entitlement. *Goldberg v. Kelly,* 397 U.S. 254 (1970); *Perry v. Sindermann,* 408 U.S. 593 (1972).

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

317. In addition, a leasehold interest, including a contractual right to renewal, constitutes a protected property interest.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

318. CDCLI's month to month custom, instead of administering the HCV program in compliance with 42 U.S.C. §1437f and 24 CFR §982, deprived the Plaintiff of her legitimate entitlement to her lease renewals, which in turn deprived her leasehold, which deprived her of continued tenancy.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

319. Seven Tier, acting jointly with Barry and CDCLI, deprived Plaintiff of procedural due process, by relying on the absence of the written lease and formal structure of the tenancy, to characterize Plaintiff's noncompliant tenancy, as month to month.

Answer: Denies knowledge or Information Sufficient to form a belief.

320. Instead of including the regulatory requirement of a lease renewal in the lease of 2017, Seven Tier included a clause that the Plaintiff would "peacefully surrender" the premises to it at the end of the first term.

Answer: Denies knowledge or Information Sufficient to form a belief.

321. Seven Tier then, acting jointly with Barry and CDCLI, invoked the manufactured month to month status and then used it as a basis to deprive the Plaintiff of a proper termination , notice.

Answer: Denies knowledge or Information Sufficient to form a belief.

322. On or about August 19, 2022, Seven Tier served Plaintiff a 90- Day notice "electing" to purportedly terminate and not renew her lease, when in fact it had deprived her of her leasehold for on or about 4 years.

Answer: Denies knowledge or Information Sufficient to form a belief.

323. Because this month-to-month custom left Plaintiff without a written lease for 2022, such enabled Seven Tier to avoid asserting any grounds for good cause, in violation of 42 U.S.C.A. §§ 1437E(d)(1)(B)(iv) and (o)(7)(C); 24 C.F.R. § 982.310(e)(2)(i).

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

324. Barry accepted Seven Tier's notice as adequate.

Answer: Denies knowledge or Information Sufficient to form a belief.

325. Because Barry and CDCLI accepted this purported notice, Seven Tier was able to move forward and file a summary eviction proceeding, pleading only that Plaintiff was a month to month "holdover", evading a showing of good cause and disclosure of the material fact of Plaintiff's HCV status, as required under RPAPL §741.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

326. As a result, on or about January 29, 2023, Plaintiff had to flee from her 448 Home.

Answer: Denies knowledge or Information Sufficient to form a belief.

327. As such, Seven Tier, acting jointly with Barry and CDCLI, deprived Plaintiff of her leasehold, lease renewal and continued tenancy property interests, without notice, good cause and a meaningful opportunity to be heard in a summary eviction proceeding.

Answer: Denies knowledge or Information Sufficient to form a belief.

328. Thus, Seven Tier deprived the Plaintiff of procedural due process protected by the 14th Amendment to the United States Constitution.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

**DEFENDANT BARRY**

329. Plaintiff hereby incorporates and realleges paragraphs 1 through 328 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

330. Barry deprived Plaintiff of her property interest in her lease renewal, leasehold and continued tenancy, by accepting the purported notice of termination of the Plaintiff's tenancy from Seven Tier, when she knew full well that she had not ensured that such had been formed for the aforesaid years,

Answer: Denies knowledge or Information Sufficient to form a belief.

331. She also did the same, when she paved the way for Seven Tier to file a holdover eviction against Plaintiff, merely stating that she was a month to month tenant, instead of pleading good cause under 42 U.S.C.A. §§ 1437£(d)(1)(B)(iv) and (o)(7)(C); 24 C.F.R. § 982.310(e)(2)(i) and the TA.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

332. Barry, acting jointly with Seven Tier, deprived Plaintiff of her lease renewals, leasehold and continued tenancy property interests, without notice and a meaningful opportunity to be heard, before she could be removed from her home.

Answer: Denies knowledge or Information Sufficient to form a belief.

333. Thus, Barry deprived the Plaintiff of her constitutional right to procedural due process, under the 14th Amendment to the United States Constitution.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

**DEFENDANT MANGINO**

334. Plaintiff hereby incorporates and realleges paragraphs 1 through 333 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

335. Mangino, acting jointly with Phraner and CDCLI, deprived Plaintiff of procedural due process, by relying on the absence of the written lease and formal structure of the tenancy, to characterize Plaintiff's noncompliant tenancy, as month to month.

Answer: Denies.

336. Mangino served the Plaintiff with a purported termination notice which asserted no grounds for good cause.

Answer: Admit to the extent the document speaks for itself.

337. Mangino served the same upon CDCLI.

Answer: Admit.

338. Phraner accepted the notice as adequate.

Answer: Denies knowledge or Information Sufficient to form a belief.

339. Mangino then cloaked a retaliatory eviction in the garb of a "holdover" summary proceeding.

Answer: Denies.

340. Mangino pleaded no grounds for good cause in his petition, under federal law and in compliance with RPAPL §741.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

341. Because Phraner and CDCLI accepted his purported notice, Mangino was able to move forward and file a summary eviction proceeding, pleading only that Plaintiff

was a month to month "holdover", evading a showing of good cause and disclosure of the material fact of Plaintiff's HCV status, as required under RPAPL §741.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

342. As a result, Plaintiff has been subjected to a summary eviction proceeding since on or February 5, 2026, that she never should have been subjected to without adequate notice and a meaningful opportunity to be heard.

Answer: Denies.

343. Mangino, acting jointly with Defendant Phraner, and CDCLI, deprived Plaintiff of her HCV leasehold, lease renewal and continued tenancy property interests, without procedural due process, in violation of the 14$^{11}$' Amendment to the Constitution of the United States.

Answer: Denies.

**DEFENDANT PHRANER**

351. Phraner, acting jointly with Mangino, deprived Plaintiff of her lease renewals, leasehold and continued tenancy property interests, without notice and a meaningful opportunity to heard, before she could be removed, or subjected to removal from her home.

352. Thus, Phraner deprived the Plaintiff of her constitutional right to procedural due process, under the 14th Amendment to the United States Constitution.

**COUNT III: 42 U.S.C §1983 CONSPIRACY TO DEPRIVE PROCEDURAL DUE PROCESS- ZAWYRUCHA**

353. Plaintiff hereby incorporates and realleges paragraphs I through 352 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

354. Zawyrucha filed an eviction petition against the Plaintiff which deliberately and strategically omitted her Housing Choice Voucher (HCV) status. This omission was intended to deprive the Plaintiff of proper notice and a meaningful opportunity to be heard by bypassing the jurisdictional prerequisites of the state court.

Answer: Denies knowledge or Information Sufficient to form a belief.

355. Zawyrucha's evasive petition stripped the Plaintiff of the mandatory federal procedural safeguards provided by 42 U.S.C. §1437f and 24 C.F.R. §982.310. This omission was a necessary overt act in the conspiracy, as it enabled the Court to exercise jurisdiction it otherwise lacked.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

356. By filing a petition that was facially defective under federal law, Zawyrucha provided the fraudulent premise that the Clerk and Judge Ukeiley utilized to justify their summary "bulk bundling" and "pocketing" of the litigation. This allowed the

state actors to treat a federally-protected tenancy as a standard market-rate eviction, bypassing the heightened scrutiny required for Section 8 tenants.

Answer: Denies knowledge or Information Sufficient to form a belief.

357. Zawyrucha's conduct utilizes the established custom and practice of CDCLI, which consistently fails to intervene or enforce administrative obligations, when landlords circumvent federal notice requirements.

Answer: Denies knowledge or Information Sufficient to form a belief.

358. By filing a petition that relies on CDCLI's predictable inaction, Zawyrucha ensured that the fraudulent omission of Plaintiff's HCV status would remain unchallenged by the agency, thereby providing the "legal cover" necessary for Judge Ukeiley and the Clerk to proceed with the subversion of Plaintiffs due process rights.

Answer: Denies knowledge or Information Sufficient to form a belief.

359. Defendant Zawyrucha, acting in concert with Judge Ukeiley, deprived Plaintiff of notice and the right to be heard during the hearings conducted on February 5 and February 26, 2026, to ensure that Defendant Mangino could evict her as a mere month to month tenant and holdover, as opposed to a Section 8 tenant with procedural safeguards.

Answer: Denies knowledge or Information Sufficient to form a belief.

360. While representing Defendant Mangino, Zawyrucha reached a clandestine understanding with Judge Ukeiley during the *ex parte* "second call" hearing.

Answer: Denies knowledge or Information Sufficient to form a belief.

361. Despite having previously established a formal briefing schedule, Judge Ukeiley proposed a procedural detour to Zawyrucha, stating: "So let's do a court to notify."

Answer: Denies knowledge or Information Sufficient to form a belief.

362. Judge Ukeiley further instructed the clerk to falsify the court record by stating, "...put in the Court's note that the respondent's motion papers are rejected as having been unsigned...," even though he had already accepted the Plaintiff's papers into the record.

Answer: Denies knowledge or Information Sufficient to form a belief.

363. This directive was a deliberate judicial act intended to prejudice the Plaintiff's case by erasing her written submissions from the official narrative.

Answer: Denies knowledge or Information Sufficient to form a belief.

364. Judge Ukeiley then instructed Zawyrucha: "So Mr. Zawyrucha, it may be good if -- or it may be wise if you send a notice to the respondent as well, just stating that there is a court appearance on -- for 22 February 26th, the reason being is that the motion papers were not signed by the respondent" This instruction effectively directed Zawyrucha to omit the critical fact that the court had rescinded the briefing schedule.

Answer: Denies knowledge or Information Sufficient to form a belief.

365. Judge Ukeiley subsequently admitted on the record that he was rescinding the briefing schedule, clarifying his decision to the Clerk by stating: "Pm rescinding that. Yeah."

Answer: Denies knowledge or Information Sufficient to form a belief.

366. Zawyrucha signaled his participation and approval of this shift by replying: "Thank you, Your Honor."

Answer: Denies knowledge or Information Sufficient to form a belief.

367. This exchange demonstrates that Judge Ukeiley, a state officer, reached an agreement with Zawyrucha to deprive Plaintiff of notice and the opportunity to be heard at the February 26, 2026, hearing by preventing her from filing a formal opposition.

Answer: Denies knowledge or Information Sufficient to form a belief.

368. Furthermore, this coordination created a "hollow" record designed to shield Zawyrucha's procedural failures from appellate review, thereby stripping Plaintiff of her statutory right to appeal.

Answer: Denies knowledge or Information Sufficient to form a belief.

369. The fact that Judge Ukeiley permitted Zawyrucha to appear *ex parte* to address the Plaintiff's papers, before rescinding the briefing schedule, further evidences an agreement to deprive Plaintiff of due process.

Answer: Denies knowledge or Information Sufficient to form a belief.

370. Zawyrucha continued to act in concert with Judge Ukeiley during the proceedings on February 26, 2026.

Answer: Denies knowledge or Information Sufficient to form a belief.

371. When Zawyrucha addressed the Court saying, "Your Honor, Application," he was making an oral motion intended to bypass formal notice requirements.

Answer: Denies knowledge or Information Sufficient to form a belief.

372. Judge Ukeiley responded, "Yea, come up," inviting Zawyrucha into a "sidebar" conversation to discuss the grounds for his "application." This constituted another *ex parte* communication that kept Plaintiff in the dark regarding the true purpose of the appearance.

Answer: Denies knowledge or Information Sufficient to form a belief.

373. This sequence confirms a meeting of the minds between Zawyrucha and Judge Ukeiley to deprive Plaintiff of notice and a fair opportunity to contest Zawyrucha's improper application.

Answer: Denies knowledge or Information Sufficient to form a belief.

374. The Clerk's interjection—"That would be 60, 70 and 71"—reveals that the Clerk was aware of a pre-arranged plan to be executed for Zawyrucha's benefit. As the transcripts show no prior conversation between Zawyrucha and the Clerk, the Clerk could not have known which cases to bundle without prior coordination with Zawyrucha, Judge Ukeiley, or both.

Answer: Denies knowledge or Information Sufficient to form a belief.

375. Zawyrucha affirmed this pre-arrangement by stating: "I agree."

Answer: Denies knowledge or Information Sufficient to form a belief.

376. The Clerk confirmed the completion of the task, replying: "Yes, that's it."

Answer: Denies knowledge or Information Sufficient to form a belief.

377. Zawyrucha then asked the Clerk, "It's all one index number, right?" requesting that the Clerk bundle Plaintiff's Case No. 60 with two other unknown matters (Nos. 70 and 71) under a single index number.

Answer: Denies knowledge or Information Sufficient to form a belief.

378. The Clerk then replies: "Yes".

Answer: Denies knowledge or Information Sufficient to form a belief.

379. This exchange between a state court officer and Zawyrucha proves an agreement to "bulk bundle" Plaintiff's case with unrelated matters handled by Zawyrucha.

Answer: Denies knowledge or Information Sufficient to form a belief.

380. This bundling deprived Plaintiff of her right to an individualized hearing, treating her legal interests as a mere component of a bulk transaction.

Answer: Denies knowledge or Information Sufficient to form a belief.

381. Following these clandestine agreements, Judge Ukeiley proceeded with the hearing.

Answer: Denies knowledge or Information Sufficient to form a belief.

382. This 'shorthand' procedure was specifically designed to facilitate a summary deprivation of the Plaintiff's rights while avoiding a reviewable record on the merits of her HCV and state defenses.

Answer: Denies knowledge or Information Sufficient to form a belief.

383. Judge Ukeiley and Zawyrucha then ambushed Plaintiff with Zawyrucha's application for an extension of time to answer her Motion to Dismiss.

Answer: Denies knowledge or Information Sufficient to form a belief.

384. Consequently, Judge Ukeiley granted Zawyrucha three additional weeks to respond, averting the default consequences of Zawyrucha's failure to timely object or answer.

Answer: Denies knowledge or Information Sufficient to form a belief.

385. This tactical maneuver deprived Plaintiff of prior notice and was intended to strip her of her written defenses, transition the case to an unrecorded oral status, and facilitate the "pocketing" of written orders.

Answer: Denies knowledge or Information Sufficient to form a belief.

386. This coordination prejudiced Plaintiff by placing her at a severe procedural disadvantage at a moment when ZawYrucha's own failures should have resulted in a legal advantage for the Plaintiff.

Answer: Denies knowledge or Information Sufficient to form a belief.

387. Zawyrucha continues to benefit from Judge Ukeiley's persistent refusal to issue written orders regarding Plaintiff's Order to Show Cause, Motion to Cure, Objection to Improper Extension, and various requests for written decisions.

Answer: Denies knowledge or Information Sufficient to form a belief.

388. The transcripts of the February 5th and February 26$^{t}$h proceedings provide direct evidence of an express agreement between Zawyrucha, Judge Ukeiliey and the unnamed Clerk, to deprive the Plaintiff of a meaningful opportunity to defend her property interests. By coordinating the "rejection" of papers and the "bundling" of cases off-the-record, the parties reached an express understanding to facilitate the taking of Plaintiff's Section 8 benefits and leasehold interest without due process.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

**PERSISTENT AND WIDESPREAD CUSTOM**

389. Plaintiff hereby incorporates and realleges paragraphs 1 through 388 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

390. The repeated application of this policy across multiple tenancies and over a span of seven years for the Plaintiff, demonstrates that it was persistent and widespread such that it had the force of law. *City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988). *Littlejohn v. City of New York,* 795 F.3d 297, 315, (2d Cir. 2015).

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

391. In addition, in that CDCLI also explicitly stated in its Housing Choice Voucher Program Guidebook for Participants, from on or about December 1, 2008, that tenancies automatically transform to a month to month status, it has implemented this custom, practice, or usage for at least 17 years.

Answer: Denies knowledge or Information Sufficient to form a belief.

. **CONSTRUCTIVE KNOWLEDGE**

392. Plaintiff hereby incorporates and realleges paragraphs 1 through 391 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

393. In that Plaintiff was indeed subjected to this very custom in two different homes, with two different landlords, and two different workers, over a span of approximately seven years, CDCLI's policymakers had constructive knowledge of this unconstitutional custom.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

**ACTUAL KNOWLEDGE**

394. Plaintiff hereby incorporates and realleges paragraphs 1 through 393 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

395. In that Barry on May 4, 2022, stated that she was copying Plaintiff's complaints to her supervisor and Phraner, forwarded the not less than 50 page email to the Assistant Director herself, Hayes, CDCLI had actual knowledge of the custom.

Answer: Denies knowledge or Information Sufficient to form a belief.

396. In that Phraner• and Hayes engaged in an email battle with the Plaintiff, fiercely insisting that the regulations supported CDCLI's month to month custom, CDCLI policymakers had actual knowledge of the custom.

Answer: Denies knowledge or Information Sufficient to form a belief.

397. In that Hayes on December 4, 2025, even attempted to rewrite 24 CFR §982.308(b)(1) by inserting the words "before the initial term of the lease" into the regulation, CDCLI's policymakers not only had actual knowledge of the custom, it fought to maintain it.

Answer: Denies knowledge or Information Sufficient to form a belief.

398. In that the Director herself, Lori Corrar, was copied on this lengthy email, CDCLI's policymaker had actual knowledge of the unconstitutional, month to month practice.

Answer: Denies knowledge or Information Sufficient to form a belief.

399. In that the Director, a Vice President of Rental Assistance, and two different Assistant Directors signed the so-called yearly amendments, CDCLI had actually knowledge of the custom which caused due process deprivations.

Answer: Denies knowledge or Information Sufficient to form a belief.

400. CDCLI's Assistant Director, Defendant Hayes, ratified the custom by explicitly stating to Plaintiff on email: "[Iit appears that you are on a month-to-month in this unit."

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

**CONSTRUCTIVE ACQUIESENCE**

401. Plaintiff hereby incorporates and realleges paragraphs 1 through 400 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

402. CDCLI's policymakers, on constructive and actual notice, constructively acquiesced to the custom.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

403. Hayes did not try to rectify the deprivation, but merely instructed Plaintiff to utilize the move-out packet that Phraner had sent her.

Answer: Denies knowledge or Information Sufficient to form a belief.

404. Barry also sent a move-out packet.

Answer: Denies knowledge or Information Sufficient to form a belief.

405. Phraner sent a move-out packet.

Answer: Denies knowledge or Information Sufficient to form a belief.

406. Although the Director Lori Corrar was added to the lengthy email, she took no steps to abolish the custom and restore the legal, protective procedures of the program.

Answer: Denies knowledge or Information Sufficient to form a belief.

407. Mildred Rivera, a Vice President of Rental Assistance, on October 21, 2022, signed a purported amendment, thus she had actual knowledge of the custom, but constructively acquiesced to it.

Answer: Denies knowledge or Information Sufficient to form a belief.

408. Marianne Scopo, an Assistant Director of Rental Assistance, on February 26, 2021 signed a purported amendment, thus she had actual knowledge of the custom, but constructively acquiesced to it.

Answer: Denies knowledge or Information Sufficient to form a belief.

409. CDCLI issued its new tenants handbooks which explicitly stated that a tenant automatically converts to month to month, as far back as at least 2008, thus CDCLI had actual knowledge of the custom, but constructively acquiesced it,

Answer: Denies knowledge or Information Sufficient to form a belief.

## DELIBERATE INDIFFERENCE

410. Plaintiff hereby incorporates and realleges paragraphs 1 through 409 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

411. CDCLI showed deliberate indifference when its employees made the following apathetic statements:

Answer: Denies knowledge or Information Sufficient to form a belief.

412. On May 4, 2022, Barry stated: "You may withdraw from this program".

Answer: Denies knowledge or Information Sufficient to form a belief.

413. She also stated: "You do...have a point of contact...the point of contact works with the landlord directly."

Answer: Denies knowledge or Information Sufficient to form a belief.

414. She then apologized that "things [had] changed in the last two years".

Answer: Denies knowledge or Information Sufficient to form a belief.

415. On November 9, 2022, Barry stated "...you may choose to pay your portion, you may vacate, you may stay and he will choose to go through the eviction process...this is all up to you as you are the head of the household."

Answer: Denies knowledge or Information Sufficient to form a belief.

416. On August 27, 2025 Phraner responded that Mangino harassing the Plaintiff and trying to force her enter into a contract to assume his HQS responsibilities were matters "outside CDCLI's scope" of duties and directed Plaintiff to seek legal counsel.

Answer: Denies knowledge or Information Sufficient to form a belief.

417. On September 15, 2025 Phraner stated: "If you choose not to vacate the unit upon the lease's expiration, the landlord has indicated that he will initiate the eviction process at that point to regain possession of the property."

Answer: Denies knowledge or Information Sufficient to form a belief.

418. On November 4, 2025, she stated: "As for your lease, it is the responsibility of both the tenant and the landlord to ensure that a valid lease is in place each year, *if that is what the landlord chooses.* [Y]our landlord has *chosen* not to renew your lease, which is within his rights once your lease term has ended. If you choose not to vacate

the unit and return the property to the landlord, he also has the legal right to initiate an eviction process to regain possession of the property."

Answer: Denies knowledge or Information Sufficient to form a belief.

419. On November 3, 2025 Phraner stated: "If you would like to know when your lease is up, I would encourage you to contact your landlord for that information."

Answer: Denies knowledge or Information Sufficient to form a belief.

420. On December 3, 2025, Hayes states that Mangino had *"chosen* not to renew the lease".

Answer: Denies knowledge or Information Sufficient to form a belief.

421. She also states: "Per NYS HCR program rules, the public housing agency cannot require a private landlord to renew a lease."

Answer: Denies knowledge or Information Sufficient to form a belief.

422. Hayes advises that Plaintiff seek counsel, begin searching for a new home and utilize the move-out packet that Phraner provided her with.

Answer: Denies knowledge or Information Sufficient to form a belief.

423. She further states: "All other concerns and issues have been addressed directly by the assigned housing specialist", referring to Phraner. "If you have any questions or need support during your move process, please feel free to contact Delores. Thank you."

Answer: Denies knowledge or Information Sufficient to form a belief.

424. Hayes ends the email thread with: "Thank you and have a good day."

Answer: Denies knowledge or Information Sufficient to form a belief.

## MOVING FORCE

425. Plaintiff hereby incorporates and realleges paragraphs 1 through 424 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

426. As without the policy, custom, practice or usage of the "Automatic Month to Month" tenancy, Plaintiff's constitutional rights would not have been violated.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

427. If CDCLI had not implemented its unofficial custom, Plaintiff would have had written lease renewals for not less than one year, after every recertification, which would have secured her due process protections, when facing the unlawful evictions filed by Seven Tier and Mangino.

Answer: Denies.

428. Such would have also prevented her from suffering the functional equivalent of a termination of her benefit, without the due process requirement of an administrative hearing.

Answer: Denies.

429. On actual and constructive notice and upon a failure to train, CDCLI's employees and final policymakers were deliberately indifferent to the custom.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

430. Thus, this policy, practice or custom and such deliberate indifference was the moving force behind the deprivations.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

**FAILURE TO TRAIN-**

**DEFENDANT HAYES**

431. Plaintiff hereby incorporates and realleges paragraphs 1 through 430 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

432. CDCLI had a duty to train its employees on the requirements of federal housing law, including renewal lease execution, HAP contract limitations, and termination procedures.

Answer: Denies knowledge or Information Sufficient to form a belief.

433. CDCLI made a decision not to train its employees on the correct procedure for lease renewals, pursuant to 42 U.S.C. §1437f and 24 CFR §982.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

434. CDCLI was deliberately indifferent, in that it had a pattern of recertifications without lease and HAP renewals, extending across two tenancies, two landlords, two housing specialists, 2 Assistant Directors and multiple employees signing off on the purported amendments as aforedescribed, over a span of seven years.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

435. For each of the seven years, CDCLI's employees issued the "Contract and Tenancy Addendum Amendments" letters, to Plaintiff, instead of ensuring that the landlords had actually executed lease renewals with the Plaintiff.

Answer: Denies knowledge or Information Sufficient to form a belief.

436. The training program was inadequate in that there was not one at all.

Answer: Denies knowledge or Information Sufficient to form a belief.

437. This is evident as Assistant Director, Defendant Hayes, had to conduct Google searches, to find the regulations of 24 CFR §982. Such shows that CDCLI does not even know where to find the regulations, let alone train its employees to adhere to them.

Answer: Denies knowledge or Information Sufficient to form a belief.

438. It is also evident in that its employees fervently fought the Plaintiff on the not less than 50 page email, insisting that the Month to Month custom was correct.

Answer: Denies knowledge or Information Sufficient to form a belief.

439. The deficiency in training, or lack of a training program at all, in the correct way to renew a tenancy under the HCV program, caused Plaintiff to be subjected to a deprivation of her right to due process before she could be stripped of her HCV benefit and leasehold property interests.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

440. Even without a pattern- which there was one- the need for specific training in tenancy renewals was obvious.

Answer: Denies knowledge or Information Sufficient to form a belief.

441. Hayes supervises the employees of CDCLI.

Answer: Denies knowledge or Information Sufficient to form a belief.

442. CDCLI manages rental assistance for approximately 8, 925 tenants.

Answer: Denies knowledge or Information Sufficient to form a belief.

443. With such a significant number of tenants it is statistically inevitable that its employees are tasked with renewing the lease and HAP structure, which ordinarily results in the attachment of the statutory and regulatory protections.

Answer: Denies knowledge or Information Sufficient to form a belief.

444. The lease is the written instrument which secures the interest in the property.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

445. It is obvious that leaving the tenant without its written legal instrument makes the tenant being evicted without due process highly predictable.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

446. It is also highly predictable that the employees' failure to ensure that the statutory and regulatory framework is in place annually, will subject the tenant to the functional equivalent of a termination of the benefit, without the due process of an administrative hearing.

Answer: Denies knowledge or Information Sufficient to form a belief.

447. In light of this obviousness, Hayes', failure to ensure that CDCLI's employees received adequate training on how 42 USC §1437f and 24 CFR §982 work together to protect the constitutional rights of tenants, constitutes deliberate indifference to the obvious need for the training.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

448. Had CDCLI trained its employees, or established an adequate training program, Plaintiff would not have been subjected to evictions with inadequate notice, brought upon petitions that evaded the requirement of a showing of good cause.

Answer: Denies knowledge or Information Sufficient to form a belief.

449. Plaintiff also would not have suffered the functional equivalent of the termination of her benefit, without an administrative hearing.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

450. Thus, Hayes' and CDCLI's failure to train was the moving force behind the deprivations of Plaintiff constitutional rights.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

## INJURY

451. Plaintiff hereby incorporates and realleges paragraphs lthrough 450 as if fully set forth herein.

Answer: Defendant hereby incorporates and realleges each and every answer to the incorporated and realleged paragraphs mentioned in this allegation.

452. As a direct and proximate result of the conduct of all named Defendants, Plaintiff suffered and continues to suffer: deprivation of constitutionally protected property interests, emotional distress, housing insecurity, litigation costs, and loss of federally protected procedural rights.

Answer: Denies.

## VII. STATUTE OF LIMITATIONS

453. Plaintiff hereby incorporates and realleges paragraphs 1through 452 as if fully set forth herein.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

454. The conduct described herein was not a single act, but a series of repeated actions occurring over a span of on or about 7 years and across 2 tenancies.

Answer: Denies knowledge or Information Sufficient to form a belief.

455. Defendants engaged in an ongoing practice of: failing to execute written leases; continuing HAP payments absent tenancy compliant with the applicable laws; failing to require landlord certifications; and permitting termination without good cause.

Answer: Denies.

456. Each recertification cycle, each issuance of a "Contract and Tenancy Addendum Amendment," and each acceptance of a defective termination notice constituted a new violation.

Answer: Denies.

457. This conduct forms a continuing violation under federal law.

Answer: Denies.

458. Plaintiffs claims are therefore timely under the continuing violation doctrine. *Shorn° v. City of New York,* 579 F.3d 176 (2d Cir. 2009).

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

459. To the extent any individual act falls outside the limitations period, it is part of a

continuous policy and practice that extended into the limitations period and is actionable in its entirety.

Answer: Denies knowledge or Information Sufficient to form a belief and refers all questions of law to the Court.

**AS AND FOR A FIRST AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:**

460. Plaintiffs have unclean hands.

**AND FOR AN SECOND AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:**

461. Plaintiffs have failed to mitigate their damages.

**AS AND FOR A THIRD AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:**

462. Plaintiffs' claim is barred by the statute of limitation.

**AS AND FOR A FOURTH AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:**

463. If the damages were sustained by the plaintiffs at the time, place and in the manner alleged, then such damages are attributable, in whole and part, to the culpable conduct and/or assumption of risk by the plaintiffs.

**AS AND FOR A FIFTH AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:**

464. If any damages are recoverable against the answering defendants, then amount of such damages must be diminished in proportion to the culpable conduct and/or assumption of risk attributable to the plaintiffs.

**AS AND FOR A SIXTH AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:**

465. If any liability is found as against answering defendant(s), this liability will constitute fifty percent (50%) or less **of** all liability assigned to all parties liable, and, as such, the liability of this answering defendant(s) to plaintiff for non-economic loss shall be limited, and shall not exceed answering defendant's (s') equitable share, as provided in CPLR Art. 16.

**AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:**

466. Any injuries or damages alleged were not caused by negligent act or omission by these answering defendants, or any individual or entity acting under their direction of control.

**AS AND FOR A EIGHT AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:**

467. PIaintiffs' own culpable conduct was the sole superseding and/or intervening cause of the alleged occurrence.

**AS AND FOR A NINETH AFFIRMATIVE DEFENSE, DEFENDANTS ALLEGE:**

468. These answering defendants specifically reserve the right to assert further affirmative defenses as are appropriate as further discovery and inspection may reveal.

**AS AND FOR A FIRST CROSS-CLAIM AGAINST CO-DEFENDANTS, COMMUNITY DEVELOPMENT CORPORATION OF LONG ISLAND, INC., DELORES PHRANER and WILMA HAYES,**

469. If plaintiffs sustained any injuries as alleged, other than through their own negligence, and if the answering defendant(s) is(are) found liable to plaintiffs for any portion of those damages, then such liability shall derive from the carelessness, recklessness, negligence **or** intentional acts commissions or omissions on the part of the co-defendants, without any carelessness, recklessness, negligence and/or acts or

commission or omission on the part of the answering defendant(s), and accordingly, the answering defendant(s) is(are) entitled to common-law and/or contractual indemnification over and against co-defendants, for the amount of any such award.

**AS AND FOR A SECOND CROSS-CLAIM AGAINST CO-DEFENDANTS, COMMUNITY DEVELOPMENT CORPORATION OF LONG ISLAND, INC., DELORES PHRANER and WILMA HAYES,**

470. If the plaintiffs sustained the damages in the manner and at the time and place alleged through any carelessness, recklessness, negligence or intentional acts or commissions or omissions other than plaintiffs' own, then said damages were sustained in whole or in part by reason of the carelessness, recklessness, negligence or intentional acts or commission or omissions on the part of co-defendants, and if any judgment is recovered herein against the answering defendant(s) then the answering defendant(s) would be damaged thereby and would be entitled to contribution on the basis of apportionment of responsibility for the alleged occurrence and entitled to judgment over and against co-defendants, for all or part of any verdict or judgment that plaintiffs may recover against the answering defendant(s), together with costs, disbursements and attorneys fees.

**WHEREFORE,** defendant requests judgment dismissing the complaint and denying all relief requested therein, together with such other and further relief as the Court deems just and proper.

Dated: Suffolk, New York
August 7, 2026

John Mangino, ***pro se***
Defendant
9 Heather Crescent
Commack, NY 11725
(631) 697-5683

AOL Mail

Sent × Search your mail or the web

24/7 Help John Home

Compose

Today on AOL

New Mail 284K
Old Mail
Starred
Drafts 106
Sent
Spam
Recently Deleted
Less

Views Hide
Contacts
Photos
Documents
Unsubscribe
Receipts
Credits
Travel

Folders Hide
+ New Folder
Saved Mail
Archive 21
Deleted Messages
Enter a folder name
jmm300 1
Junk E-mail
lottery
mahjong5 8
Notebook
Notes
SavedIMs
Sent Messages 47
tv photo

Back Keep as New Move Delete

Settings

## Case 26cv02371 Kyung Trotter v CDCLI

Sent

**Johnny** Aug 7, 2026 at 11:58 PM
From: jmm300@aol.com
To:
Prosecases@CA2.uscourts.gov

Trotter answer 8:7:2026.pdf
766 KB

Reply, Reply All or Forward

Send Attach Add stationery Spelling More



NHA Schools
Discover a curriculum that also shapes character
Sponsored by NHA Schools

