FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 21 2026 ★
LONG ISLAND OFFICE

RECEIVED
SEP 21 2026
EDNY PRO SE OFFICE

Kyung L. Trotter
Plaintiff, Pro Se
374 Donald Blvd
Holbrook, NY 11741
(631) 202-7887
Trotter.Kyung@yahoo.com

September 21, 2026

The Honorable Sanket J. Bulsara
United States District Judge
United States District Court for the Eastern District of New York
100 Federal Plaza, Courtroom 930
Central Islip, New York 11722

Re: **Trotter v. Community Development Corporation of Long Island, Inc., et al.**, No. **26-cv-02371 (SJB) (ARL)— Plaintiff's Opposition to Defendant Mangino's Request for a Pre-Motion Conference to Move Under Rule 12(c), DE 73**

Dear Judge Bulsara:

Plaintiff Kyung L. Trotter, appearing pro se, respectfully submits this response to Defendant John Mangino's request for a pre-motion conference to move for judgment on the pleadings. DE 73. The request should be denied because the First Amended Complaint plausibly—and in substantial part through Mangino's own admissions—alleges that Mangino acted under color of state law when he used CDCLI's HCV tenancy classification and rules to terminate Plaintiff's tenancy without good cause and commence a defective holdover proceeding.

**I. CDCLI's Delegated Public Function Is Admitted**

Plaintiff alleges that New York delegated administration of the Housing Choice Voucher ("HCV") program in Suffolk County to CDCLI. DE 11 ¶¶ 4–6. CDCLI admits that it is HCR's local administrator for the HCV program; that HCR is New York's public housing agency; and that CDCLI follows HUD regulations and HCR's Section 8

RECD IN PRO SE OFFICE
SEP 21 '26 PM 1:49

Administrative Plan. DE 47 at 2. That formal admission withdraws CDCLI's delegated program-administration role from dispute. See *Pillars v. Gen. Motors LLC.*, 957 F.3d 357, 361 (2d Cir. 2020).

Plaintiff further alleges that CDCLI's practice of maintaining HCV tenants in lease-less, purported month-to-month tenancies strips them of the written lease, tenancy-addendum, renewal, good-cause, and hearing protections attached to a lawful HCV tenancy. DE 11 ¶¶ 48–68. Plaintiff alleges that this practice is an unconstitutional end-run: CDCLI cannot accomplish indirectly, by reducing an active HCV participant to a purported month-to-month holdover, the functional equivalent of ending the participant's voucher-related tenancy protections without the process otherwise required before termination of assistance. See 24 C.F.R. § 982.555.

**II. The Complaint Plausibly Alleges That Mangino Acted Under Color of State Law**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," providing the defendant fair notice of the grounds upon which the claim rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). *Smith v. Campbell*, 782 F.3d 93, 99 (2nd Cir. 2015). While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation requires more than labels, conclusions, or a formulaic recitation of the elements of a cause of action. Id. A complaint must contain enough factual matter sufficient to nudge a claim over the line from merely conceivable to plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) raising a reasonable expectation that discovery will reveal evidence supporting the claim. *Bell Atl. Corp. v. Twombly*, at 556-557.

Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of §1983. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents, quoting *United States v. Price*, 383 U.S., at 794, 86 S.Ct., at 1157. *Lugar v. Edmondson Oil Company, Inc*, 457 U.S. 922, 941 (1982).

Plaintiff made no claim whatsoever that Mangino was engaged in a "conspiracy" with CDLI. Mangino mischaracterizes the facts of the Amended Complaint to hold Plaintiff to the higher standard of pleading that there was "an agreement" between himself and CDLI. An "agreement" or "meeting of the minds" is not necessary to prove joint action. The relevant question here is whether Mangino was a willful participant in joint activity with CDCLI, the State's admitted HCV delegated authority.

Mangino's joint activity with CDLI is precisely what Plaintiff asserted in her Complaint. Plaintiff specifically alleges that Mangino acted jointly with CDCLI and Phraner in administering Plaintiff's HCV tenancy by failing to provide lease renewals, accepting HAP payments, using CDCLI's practices to characterize the tenancy as month-to-month, and effectuating termination without good cause. DE 11 ¶¶ 13–14, 114–154, 289–298. Those allegations give Mangino notice of the precise state-action theory and far exceed a bare assertion that he merely participated in a regulated program.

**III. Mangino's Own Admissions Confirm the State-Action Theory**

Before discovery, Mangino has made admissions that reinforce Plaintiff's pleaded theory. First, he admits the original lease and CDCLI HAP contract, the expiration of the

original term, and the absence of written lease renewals for 2024, 2025, and 2026. DE 55 at 28–29 ¶¶ 115, 118–20. He also admits that relevant lease terms were inserted by "government officials administering the program." *Id.* ¶¶ 116–17.

Second, in responding to the allegation that he did not execute a renewed HAP contract or certify compliance, Mangino states that he did what "HAP & CDCLI required" and continued or renewed under the terms "they described." DE 55 at 29 ¶ 121. He further admits that payments continued for a period. *Id.* ¶ 122.

Third, Mangino's own pre-motion submissions state that CDCLI's "contracts, leases [and] rules" controlled the relationship; that landlords are "subjugated" to CDCLI; that CDCLI makes rules landlords "must comply" with; that CDCLI classified Plaintiff as month-to-month; and that Mangino relied on CDCLI's written representations concerning Plaintiff's tenancy status in deciding to commence the underlying landlord-tenant proceeding. DE 63 at 2; DE 73 at 3, 6.

Fourth, Mangino admits serving a 90-day notice that did not state any good-cause ground and expressly asserted that Plaintiff had no right to a good-cause showing. DE 55 at 35 ¶¶ 149–50. He admits that he served that same notice on CDCLI. *Id.* at 36 ¶ 151. He admits knowing that Phraner had issued an overhousing notice while he insisted Plaintiff vacate. *Id.* ¶ 153. And he admits filing the holdover proceeding by alleging that Plaintiff was a month-to-month tenant and holdover. *Id.* ¶ 154.

These admissions support Plaintiff's allegation that Mangino was not acting in isolation. He used a tenancy status that CDCLI classified, administered, and required him to follow; relied on CDCLI's written representation in deciding to sue; served CDCLI

with the termination notice; and invoked the resulting classification to pursue a holdover without the good-cause safeguards applicable to Plaintiff's HCV tenancy.

**IV. The State-Court Order Confirms the Good-Cause Defect**

Plaintiff alleges that Mangino terminated her tenancy without the federally required notice stating good cause grounds and then filed a petition without pleading good cause. Federal HCV law limits termination during the lease term to stated grounds, including serious or repeated lease violations, violations of law, or other good cause, and requires a written notice specifying the grounds. 42 U.S.C. § 1437f; 24 C.F.R. § 982.310.

On June 23, 2026, the state court dismissed Mangino's holdover proceeding after finding that he failed to serve the required predicate notice and failed to plead federal good cause. Plaintiff will submit that order as Exhibit A if motion practice is authorized. The order confirms the specific notice-and-pleading defects Plaintiff alleges. Plaintiff's ability to defeat the defective holdover does not retroactively provide the process that had to precede the purported termination. See *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982).

**V. Conclusion**

Mangino cannot rely on CDCLI's asserted control for indemnification, contribution, tenancy classification, and eviction decisionmaking, yet seek dismissal by recasting himself as a wholly private actor. Plaintiff does not allege that Mangino is a state actor merely because he received HAP funds or complied with regulations. Plaintiff asserts that he acted jointly with CDCLI in implementing its end-run, month to month structure to effectuate a no-good-cause termination and defective holdover proceeding.

Plaintiff has more than plausibly stated a § 1983 claim against Mangino. Accordingly, his request for a pre-motion conference to seek Rule 12(c) dismissal should be denied.

Dated September 21, 2026, Holbrook, NY

KYUNG L. TROTTER
Plaintiff, Pro Se
374 Donald Blvd
Holbrook, NY 11741
(631) 202-7887
Trotter.Kyung@yahoo.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------------------x

KYUNG L. TROTTER,

Plaintiff,

-v-

COMMUNITY DEVELOPMENT CORPORATION OF LONG ISLAND, INC., *et al.*,

Defendants

Case No.: 26-cv-02371 (SJB) (ARL)

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMIT**

--------------------------------------------------------------------------------------x

Pursuant to the Court's Rule VI.I, 1. as well as Local Civil Rule 7 .1 (c), I hereby certify that this Response contains 1,261 words, exclusive of the caption and signature block, and complies with the length restrictions imposed by the Court.

KYUNG L. TROTTER
Plaintiff, Pro Se
374 Donald Blvd
Holbrook, NY 11741
(631) 202-7887
Trotter.Kyung@yahoo.com