FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 21 2026 ★
LONG ISLAND OFFICE

Kyung L. Trotter
Plaintiff, Pro Se
374 Donald Blvd
Holbrook, NY 11741
(631) 202-7887
Trotter.Kyung@yahoo.com

RECEIVED
SEP 21 2026
EDNY PRO SE OFFICE

September 21, 2026

The Honorable Sanket J. Bulsara
United States District Judge
United States District Court for the Eastern District of New York
100 Federal Plaza, Courtroom 930
Central Islip, New York 11722

**Re: Trotter v. Community Development Corporation of Long Island, Inc., et al., No. 26-cv-02371 (SJB) (ARL) — Plaintiff's Request for a Pre-Motion Conference Concerning a Rule 12(c) Motion for Judgment on Liability Against Defendant John Mangino**

Dear Judge Bulsara:

Plaintiff Kyung L. Trotter, appearing pro se, respectfully requests a pre-motion conference under the Court's Individual Practices, before moving under Federal Rule of Civil Procedure 12(c) for judgment on liability, against Defendant John Mangino under 42 U.S.C. § 1983. The pleadings are closed as to Mangino. His Answer, his pre-motion submissions, and the June 23, 2026, state-court dismissal order establish the material facts necessary to decide liability; damages would remain for further proceedings.

**I. Rule 12(c) Standard**

Rule 12(c) permits a party to move for judgment after the pleadings close, provided the motion will not delay trial. Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor*

SEP 21 '26 PM1:49
REC'D IN PRO SE OFFICE
SEP 21 '26 PM1:49

*Crafters, Inc.*, 842 F.2d 639, 642 (2nd Cir. 1988). In addition, the Court may take judicial notice of a State Court's order. *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2nd Cir. 1993). Plaintiff relies on the State Court's order on the eviction only for the issues actually decided: Mangino's failure to serve the required predicate notice stating good cause and his failure to plead good cause in the holdover petition.

**II. CDLI's State-Actor Status and Its Control of the HCV Tenancy Are Admitted**

CDLI has judicially admitted that it is HCR's local administrator for the Housing Choice Voucher program in Suffolk County; HCR is the State public housing agency; and CDLI administers the program under HUD regulations and HCR's Section 8 Administrative Plan. [see DE 47, p. 2]. *West v. Atkins*, 487 U.S. 42, 55-56 (1988). Thus, CDLI's State delegated function is no longer in dispute.

Plaintiff's claim is that CDLI used its state-delegated authority to create and enforce an unlawful end-run around the HCV protections. Plaintiff asserts that CDLI maintained Plaintiff in a lease-less, purported month-to-month arrangement, thereby stripping Plaintiff of the written lease renewal, concurrent HAP contract and tenancy-addendum framework that secured the federal good-cause protections.

Plaintiff further asserts that CDLI could not accomplish indirectly—through its month-to-month end-run—the practical result of ending Plaintiff's protected HCV tenancy without first lawfully terminating Plaintiff's voucher assistance, through the notice-and-hearing procedure required by 24 C.F.R. § 982.555 directly. Under Plaintiff's pleaded theory, absent that lawful termination of voucher assistance, Plaintiff remained

an HCV participant and could not be reduced by CDLI to an ordinary holdover, stripped of the federal good-cause safeguards.

Mangino's own pleading and pre-motion submissions establish that he acted under CDLI's control in implementing that end-run. Mangino admits that the original tenancy included a CDLI HAP contract; that relevant lease terms were inserted by government officials administering the program; that he did not offer written lease renewals for 2024, 2025, or 2026; and that he did what "HAP & CDLI required" to continue or renew the relationship under terms CDLI described. [DE 55 at 28–29, ¶¶ 116, 118, 120–21].

Mangino further states that CDLI's contracts, leases, and rules controlled the relationship; that landlords are "subjugated" to CDLI; that CDLI makes the rules landlords "must comply" with; that CDLI classified Plaintiff as month-to-month in writing; and that he relied upon CDLI's written representations concerning Plaintiff's tenancy status when deciding to commence the landlord-tenant proceeding. [DE 73 p. 6, DE 63, p. 2]

**III. Mangino's Termination-and-Eviction Conduct Is Fairly Attributable to the State**

Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents,' " quoting *United States v. Price*,

383 U.S., at 794, 86 S.Ct., at 1157. *Lugar v. Edmondson Oil Company, Inc*, 457 U.S. 922, 941 (1982).

The undisputed record establishes Mangino's joint action with CDLI. Mangino acted under CDLI's HCV tenancy rules and CDLI-described continuation terms; relied on CDLI's written month-to-month classification; and used that classification to issue a purported termination and commence a holdover proceeding. This is not a claim that Mangino became a state actor merely by receiving HAP funds or by operating in a regulated field, and it certainly is not that he merely engaged in a valid judicial process. It is a claim that he willfully implemented and relied upon CDLI's state-administered end-run: the maintenance of an active HCV participant in a lease-less, purported month-to-month status, so that Mangino could invoke an ordinary holdover process, without the federally required good-cause safeguards.

The relevant admissions include:

- Mangino admits that CDLI executed the HAP contract corresponding to the original lease. [DE 55 at 28, ¶ 118].
- He admits that he did not offer written lease renewals for 2024, 2025, or 2026. [DE 55 at 29, ¶ 120].
- He admits that HAP payments continued during the unrenewed tenancy, at least for a period. [DE 55 at 29, ¶ 122].
- He admits that he served Plaintiff a 90-day termination notice that asserted no good-cause grounds and expressly stated that Plaintiff had no right to a good-cause showing. [DE 55 at 35, ¶¶ 149–50].

- He admits that he served the same notice on CDLI. [DE 55 at 36, ¶ 151].
- He admits he knew of Phraner's overhousing notice while insisting that Plaintiff vacate. [DE 55 at 36, ¶ 153].
- He admits that he filed a holdover proceeding claiming Plaintiff was a month-to-month tenant and holdover. [DE 55 at 36, ¶ 154].

These judicial admissions establish joint implementation of the state-administered month-to-month end-run that Plaintiff asserts deprived her of HCV tenancy protections.

**IV. Mangino Terminated Plaintiff's Tenancy Without the Required Good-Cause Process**

Federal HCV law requires that, during the term of the lease, an owner may terminate the tenancy only for serious or repeated lease violations, violations of law, or other good cause; any termination must be preceded by written notice specifying the grounds. 42 U.S.C. § 1437f; 24 C.F.R. § 982.310. The regulation further provides that the tenancy does not terminate before the owner gives the required grounds notice, and the owner must provide the PHA a copy of the eviction notice. 24 C.F.R. § 982.310.

Mangino's notice did the opposite: it gave no good-cause ground and expressly denied that Plaintiff had a right to a good-cause showing. He then filed a petition alleging that she was only a month-to-month holdover.

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state-court judgments the same preclusive effect as they would receive in courts of the same state. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). *Burkybile v. Bd. of Educ. of Hastings-On-Hudson*, 411 F.3d 306,313 (2nd Cir. 2005). In

New York, parties are collaterally estopped from relitigating an issue when the identical issue has been decided in the prior action, the same issue is decisive in the present action and the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination. *Kaufman v. Eli Lilly and Co.*, 65 N.Y.2d 449, 492 (N.Y. 1985).

On June 23, 2026 the State Court rendered an order dismissing Mangino's eviction proceeding, finding that Mangino failed to serve the federally required predicate notice and failed to plead federal good cause. (see Exhibit A, pp. 2,4).[1] Plaintiff asserts in her Complaint that Mangino terminated her tenancy without good cause and filed a petition also lacking grounds for good cause. Mangino conducted a whole trial, having a full and fair opportunity to contest this determination. As the State Court has found that Mangino indeed served a defective notice and defective petition, this Court may take judicial notice of the State Court's order and must give the judgement full faith and credit. In addition, Mangino is collaterally estopped from relitigating these issues.

Plaintiff's successful defense of the state-court proceeding did not supply the good-cause notice that had to precede termination or be stated as and shown during the cause of action. It confirmed that Mangino used a constitutionally defective termination-

[1] Plaintiff asserts in her Amended Complaint, the precise Section 8 federal statutes and regulations which provide that good cause protections apply "during the term of the lease". [DE 11, p. 9 ¶45].

Plaintiff also breaks down the tenancy structure which must be in place to maintain these due process protections which is: a *written* lease, for not less than one year, a coterminous HAP contract, an attached Tenancy Addendum or an incorporation of the tenant's rights word for word in the lease and a clause for renewal of this same structure, once the first lease expires. [DE 11, p. 6- 11, ¶¶ 30- 68].

and-eviction mechanism. A later judicial correction does not erase the earlier deprivations of procedural due process. See *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982).

Plaintiff asserts that CDLI was required to terminate voucher assistance through the required notice-and-hearing process before it could lawfully accomplish the functional equivalent of that termination by reducing Plaintiff, an active HCV participant, to a lease-less, purported month-to-month holdover. See 24 C.F.R. § 982.555. CDLI could not accomplish indirectly, through its month-to-month end-run, what it could not accomplish directly without affording Plaintiff the hearing required.

Plaintiff does not contend that Mangino's service of a no-good-cause notice was cured merely because CDLI did not formally use the words "voucher termination." Plaintiff contends that CDLI's state-administered end-run itself deprived Plaintiff of the HCV tenancy structure, continued-tenancy protections, and hearing-protected voucher interest that made the federal good-cause process meaningful. Mangino then knowingly used CDLI's resulting month-to-month classification to issue a purported termination without good cause and pursue the defective holdover proceeding.

**V. Requested Relief**

Plaintiff respectfully requests a pre-motion conference and leave to move under Rule 12(c) for judgment against Mangino on liability under § 1983. The proposed motion will seek judgment limited to the following issues:

1. Mangino acted under color of state law through joint action with CDLI, in implementing and using its end-run in the challenged administration, termination, and eviction process;
2. Mangino issued a no-good-cause termination and pursued a no-good-cause holdover petition using CDLI's month-to-month classification; and
3. Mangino deprived Plaintiff of her protected voucher status, continued-tenancy, leasehold, and adjudicatory-process interests without due process.

Plaintiff will reserve damages, including nominal damages and any compensatory damages established by the evidence, for later proceedings.

Dated September 21, 2026, Holbrook, NY

KYUNG L. TROTTER
Plaintiff, Pro Se
374 Donald Blvd
Holbrook, NY 11741
(631) 202-7887
Trotter.Kyung@yahoo.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------------------x

KYUNG L. TROTTER,

Plaintiff,

-v-

COMMUNITY DEVELOPMENT CORPORATION OF LONG ISLAND, INC., *et al.*,

Defendants

Case No.: 26-cv-02371 (SJB) (ARL)

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMIT**

-------------------------------------------------------------------------------------x

Pursuant to the Court's Rule VI.I, 1. as well as Local Civil Rule 7 .1 (c), I hereby certify that this Response contains 1,743 words, exclusive of the caption and signature block, and complies with the length restrictions imposed by the Court.

KYUNG L. TROTTER
Plaintiff, Pro Se
374 Donald Blvd
Holbrook, NY 11741
(631) 202-7887
Trotter.Kyung@yahoo.com

The crux of Respondent's defense is that the petition should be dismissed because Petitioner was required to, but failed to provide good cause for the termination because the lease was re-newed for a "successive year" upon Petitioner's acceptance of rent payments following the termination date. According to Respondent, the lease was extended for another year through January 2025, and then further extended again, through January 2026, as a result of Petitioner's ongoing acceptance of rent payments.

Petitioner does not refute the acceptance of rent payments following the expiration of the original lease. Rather, Petitioner contends that the Section 8 tenancy became a month-to-month tenancy following the expiration of the initial lease term in January 2024, and, as a result, Petitioner was within his rights to terminate the tenancy without cause after giving proper notice at the conclusion of the lease term, i.e., the end of each month. It seems that Petitioner concedes that during any particular term, good cause, as required in the original lease, would have been required. However, since Petitioner sought to terminate the month-to-month tenancy at the end of a particular month (another way for saying refusing to re-new after the expiration of the term), good cause was neither required to be specified in the notice nor pled in the petition.

Although New York's Good Cause Eviction Law (GCEL) has not been enacted in Suffolk County, the Court's analysis does not stop there because Section 8 is a Federal-based housing assistance program that requires the parties to comply with not only State and local laws, but with the applicable Federal laws pertaining to Section 8 tenancies. The Federal rules and regulations regarding Section 8 tenancies require a landlord to demonstrate good cause for the termination of a Section 8 tenancy. Significantly, Petitioner agreed to these terms when he executed both the HAP contract and the Section 8 residential lease. Subdivision 8 of Part C of the HAP Contract, Tenancy Addendum states that "[d]uring the term of the lease (***the initial term of the lease and any extension term***), the owner may <u>only</u> terminate the tenancy because of: (1) Serious of repeated violation of the lease; (2) Violation of Federal, State, or local law that imposes obligations on the tenant in connection with the occupancy or use of the unit and the premises; (3) Criminal activity or alcohol abuse (as provided in paragraph c); or (4) Other good cause (as provided in paragraph d)" (Petitioner's Exh. 1, at p. 9) (emphasis added). The section goes on to expand upon and describe the conduct that amounts to "criminal activity" warranting termination, and further delineates examples of other good cause for termination of the tenancy during and following the initial lease term (***Id.***). Of note, the failure to pay rent is grounds to terminate a Section 8 tenancy.

Notwithstanding clear evidence regarding Respondent's failure to pay her proportionate share of the rent from December 2025 to the present, which coincides with the lease termination date, Petitioner has neither pled any breach of the lease agreement or misconduct on the part of Respondent nor provided Respondent with any such notice in advance of this proceeding. The requirement of good cause to terminate a Section 8 tenancy, even after the expiration of the initial lease term as was the case here, has been upheld in this Judicial Department. In this county, a Landlord is not forced to continue to provide a Section 8 Tenant who is compliance with all of the Section 8 provisions and lease terms a residence in perpetuity. Rather, the Landlord may elect not



Exhibit A

*Mangino v. Trotter*
Index No. LT-1852-25/IS

The subject lease in this case includes identical language regarding one year successive renewals and good cause being required for lease termination during the initial lease term and any extensions. Accordingly, the Court finds that Petitioner's acceptance of rent following the expiration date constituted a renewal lease for an additional year, which apparently was duplicated a second time. As a result, the August 2025 notice terminating the tenancy during the middle of the second successive one year renewal without good cause was defective. Since the predicate notice is not subject to amendment, any request, even if had been made, to conform the termination notice to the proof introduced at trial would be denied. To proceed with a lease termination without cause, it appears that the next opportunity to proceed in that matter with notice will occur when the lease is due to expire on January 31, 2027. In the interim, should there be good cause to terminate the lease prior to that date, this decision in no way precludes Petitioner from commencing such subsequent proceeding after proper notice is given.

The Court considered the remaining claims and arguments and found them to be without merit.

Based upon the foregoing, it is hereby

***ORDERED***, that the petition is dismissed.

This constitutes the Decision and Order of the Court.

Dated: Ronkonkoma, New York
June 23, 2026

HON. STEPHEN L. UKEILEY, J.D.C.

ENTERED
JUN 25 2026

MAILED
JUN 29 2026